﻿Citation Nr: AXXXXXXXX
Decision Date: 05/02/19 Archive Date: 05/02/19

DOCKET NO. 181010-623
DATE: May 2, 2019

ORDER

An effective date earlier than November 21, 2012, for the grant of service connection for migraine headaches, is denied.

Service connection for obstructive sleep apnea is granted.

FINDINGS OF FACT

1. The Veteran’s February 18, 2010, claim of entitlement to service connection for migraine headaches was denied by an August 2010 Department of Veterans Affairs (VA) Regional Office (RO) rating decision based on the fact that there was no clinical evidence of current migraine headaches; the Veteran did not provide sufficient information for VA to identify and obtain January 2011 VA treatment records demonstrating migraine headaches while the August 2010 rating decision was pending.

2. Resolving all doubt in favor of the Veteran, there is probative evidence of record attributing his obstructive sleep apnea to active service.

CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than November 21, 2012, for the grant of service connection for obstructive sleep apnea, have not been met. 38 U.S.C. §§ 5101, 5110; 38 C.F.R. §§ 3.1, 3.151(a), 3.155(a), 3.156(b), 3.160(c)(d), 3.400. 

2. The criteria for service connection for obstructive sleep apnea are met. 38 U.S.C. §§ 1131, 5017; 38 C.F.R. § 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran has active service from April 1978 to April 1981. On July 5, 2018, the Veteran opted to have his claims, which at that time included a number of issues, processed under the rapid appeals modernization program (RAMP) and requested a higher-level review. He was informed in a September 2018 letter that the review would be based on the evidence submitted to VA as of the date of his election. Following a September 2018 rating decision, a higher-level review, denying all of the Veteran’s claims, he appealed to the Board under direct review in October 2018 only the issues captioned on the title page herein.

Entitlement to an effective date earlier than November 21, 2012, for the grant of service connection for migraine headaches.

Except as otherwise provided, the effective date of an evaluation and award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C. § 5100; 38 C.F.R. § 3.400. 

A specific claim in the form prescribed by VA must be filed for benefits to be paid or furnished to any individual under the laws administered by VA. See 38 U.S.C. § 5101 (a); 38 C.F.R. § 3.151 (a). However, effective prior to March 24, 2015, VA regulation provided that any communication or action, indicating an intent to apply for one or more VA benefits may be considered an informal claim. 38 C.F.R. §§ 3.1 (p), 3.155(a); Brannon v. West, 12 Vet. App. 32, 34-5 (1998). Such informal claims must identify the benefit sought. 38 C.F.R. § 3.155 (a). Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. Id. If received within one year from the date it was sent to the claimant, it will be considered as filed as of the date of receipt of the informal claim. Id. Although this regulation is no longer extant, because it was in effect during the pendency of this appeal, it is applicable to the present case.

The Board has considered the Veteran’s claim and decided entitlement based on the evidence. Neither the Veteran nor his attorney has raised any other issues, nor have any other issues been reasonably raised by the record, with respect to this claim. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

The Veteran filed a February 18, 2010, claim of entitlement to service connection for migraine headaches. Such was denied by the RO in an August 2010 rating decision based on the fact that there was no clinical evidence of current migraine headaches. The Veteran was notified of the August 2010 rating decision in an August 2010 letter; he did not file a Notice of Disagreement (NOD) to the decision. His VA treatment records dated on January 24, 2011, indicate that the Veteran reported migraine headaches and such was included in his medical records. 

The Veteran filed his next claim of entitlement to service connection for migraine headaches on November 21, 2012. Such was denied by a September 2013 rating decision and the Veteran was notified of such by an October 8, 2013 letter. The Veteran, in an April 2014 statement, requested an extension of time to allow him to secure relevant medical evidence in support of his claim. In September 2014, the Veteran submitted relevant medical evidence as to his claim of entitlement to service connection for migraine headaches. The Veteran submitted an October 22, 2014, NOD to the September 2013 rating decision as to the issue of entitlement to service connection for migraine headaches. The RO responded, in a December 2014 letter, that the NOD was not timely to the September 2013 rating decision. The Veteran, in a January 2015 statement, asserted that the RO should have honored his April 2014 request for an extension of time. 

The Veteran filed another claim of entitlement to service connection for migraine headaches in March 2015, such was granted by the RO in a July 2015 rating decision, effective March 10, 2015. The RO cited the results of a May 15, 2015, Disability Benefits Questionnaire (DBQ) in which a VA examiner opined that the Veteran’s in-service blast injury and reparative surgery for a concussive injury could have likely triggered or worsened his migraine headaches. However, by a February 2018 rating decision, a Decision Review Officer (DRO) determined that there was clear and unmistakable error in the July 2015 rating decision and assigned November 21, 2012, as the effective date for service connection for migraine headaches, considering the Veteran’s claim filed on that date, denied by the September 2013 rating decision, with notice to the Veteran in October 2013, with his September 2014 submission of relevant medical evidence as to his claim of entitlement to service connection for migraine headaches, as continuous prosecution of his claim.

In a June 2018 statement, the Veteran’s attorney asserted entitlement to an effective date earlier than November 21, 2012, for the grant of service connection for migraine headaches, specifically, February 18, 2010, the date of the Veteran’s original claim. The attorney asserted that the RO should have considered the January 2011 VA treatment records demonstrating clinical evidence of current migraine headaches and readjudicated his claim, such that the February 18, 2010, claim remained pending at the time of his November 21, 2012, claim of entitlement to migraine headaches.

As discussed, the RO denied the Veteran’s February 18, 2010, claim of entitlement to service connection for migraine headaches in its August 2010 rating decision, based on the fact that there was no clinical evidence of current migraine headaches. It did not readjudicate the claim considering the January 2011 VA treatment records which contained such evidence, clinical evidence of current migraine headaches, within one year. 

VA must evaluate submissions received during the year following notice of a rating decision to determine whether they contain new and material evidence, even if the new submission may support a new claim. 38 C.F.R. § 3.156(b); Bond v. Shinseki, 659 F.3d 1362, 1367-8 (Fed. Cir. 2011); Buie v. Shinseki, 24 Vet. App. 242, 251-52 (2010). In certain circumstances, evidence will be deemed constructively part of the record before the Secretary and the Board of Veterans Affairs (Board). See Bell v. Derwinski, 2 Vet. App. 611, 612 (1992) (per curiam order). Generally, “VA is considered aware of VA-generated evidence when put ‘on notice as to its possible existence and relevance’ and when such records ‘could reasonably be expected to be a part of the record.’” Turner v. Shulkin, 29 Vet. App. 207, 217 (2018) (quoting Bell, 2 Vet. App. at 612-13); see also Bowey v. West, 11 Vet. App. 106, 109 (1998) (per curiam order) (holding that “[i]t is not reasonable to expect the Secretary or the Board to have investigated, gathered, and considered... [radiation exposure reports that] were merely referenced in expert opinion letters” because the reports’ connection to the appellant’s case was “too tenuous”). 

In Turner, the Court also held that VA treatment records generated within the one-year period following a RO decision may satisfy the requirements of § 3.156(b) when VA adjudicators were aware “of the existence of those VA treatment records within the one-year appeal period.” 29 Vet. App. 207, 211 (2018). In determining whether constructive possession has been triggered as to VA treatment records, those records must have been generated by a VA medical facility and VA adjudicators must have sufficient knowledge that such records exist. VA’s constructive receipt of such records is not tied to their relevance to the claim. Turner, 29 Vet. App. at 218. The Court noted that the level of knowledge of existence that is required to trigger constructive receipt of VA treatment records is a factual determination that the Board must address. Id.

Here, the VA treatment records at issue, those dated in January 2011, were associated with the file in July 2013, in conjunction with the Veteran’s claims pending at that time, including the Veteran’s November 21, 2012, claim of entitlement to service connection for migraine headaches. His January 2011 VA treatment records demonstrate that he sought to establish VA care; there is no evidence or assertion that he was under VA care prior to that time. Related to the Veteran’s February 18, 2010, claim of entitlement to service connection for migraine headaches, the Veteran did not identify VA as the source of any relevant treatment records. His February 18, 2010, claim form is blank in the portion of the form that requested information as to the treatment of the claimed disability. In a February 2010 letter, the RO requested that the Veteran identify the location and date of any VA treatment; the Veteran did not respond. 

Thus, within one year of the August 2010 rating decision, while the rating decision was pending, considering the August 2010 notification of the same, until August 2011, the Board finds that the Veteran did not provide sufficient information for VA to identify and obtain VA treatment records. See 38 C.F.R. § 3.160(c), (d) (defining a pending claim as one that has not been finally adjudicated and a finally adjudicated claim as one in which the period of time to file a NOD has expired or disposition in appellate review has occurred). Neither the Veteran nor his attorney have asserted or offered evidence that the Veteran provided sufficient information for VA to identity and obtain VA treatment records within one year of the August 2010 rating decision. As such, the Board finds the January 2011 VA treatment records were not constructive or otherwise in VA’s possession during the year following the August 2010 rating decision. Therefore, the rating decision become final.

The next communication from the Veteran as to migraine headaches was received by VA on November 21, 2012; his next claim of entitlement to service connection for the same. Neither the Veteran nor his attorney have asserted or offered evidence that the Veteran filed a claim of entitlement to service connection for migraine headaches prior to November 21, 2012, or from February 18, 2010, to November 21, 2012. 

The Board must determine both the date of receipt of the claim and the date entitlement arose. 38 U.S.C. § 5100; 38 C.F.R. § 3.400. Based on the above, the date of receipt of the claim is November 21, 2012, and the date entitlement arose is May 15, 2015, the date of the DBQ wherein a VA examiner opined that the Veteran’s migraine headaches were related to his in-service blast injury and reparative surgery for a concussive injury. Id. The later of these two dates, and the appropriate effective date for the grant of service connection for migraine headaches, is May 15, 2015. Id. However, the RO assigned the Veteran an effective date of November 21, 2012, in its February 2018 DRO decision, based on his date of claim, and the Board will not disturb such.

Accordingly, as a matter of law, an effective date for the grant of service connection for migraine headaches earlier than November 21, 2012, cannot be established. Because the outcome of this issue is determined by the application of law to facts that are not in dispute, the benefit-of-the-doubt rule does not apply. See Sabonis v. West, 6 Vet. App. 426, 430 (1994); see also 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

Entitlement to service connection for obstructive sleep apnea.

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Service connection can be demonstrated for a disease diagnosed after service when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). In order to establish service connection, the evidence must generally show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 506 (1995). 

A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

As a preliminary matter, the Board notes that the RO had captioned this claim as whether new and material evidence has been received to reopen a previously denied claim of entitlement to service connection for sleep apnea however, the Board finds that the claim has been continuously prosecuted since the Veteran’s original November 2012 claim of entitlement to service connection for sleep apnea such that new and material evidence is not required.

In November 2012, the Veteran submitted a claim of entitlement to service connection for sleep apnea. Such was denied by a September 2013 rating decision and the Veteran was notified of such by an October 8, 2013 letter. The Veteran, in an April 2014 statement, requested an extension of time to allow him to secure relevant medical evidence in support of his claim. In September 2014, the Veteran submitted relevant medical evidence as to his claim of entitlement to service connection for sleep apnea. The Veteran submitted an October 22, 2014, NOD to the September 2013 rating decision as to the issue of entitlement to service connection for sleep apnea. The RO responded, in a December 2014 letter, that the NOD was not timely to the September 2013 rating decision. The Veteran, in a January 2015 statement, asserted that the RO should have honored his April 2014 request for an extension of time. The Veteran filed another claim of entitlement to service connection for sleep apnea in March 2015, such was denied by the RO in a July 2015 rating decision. The Veteran perfected an appeal of the July 2015 rating decision and the claim was captioned as whether new and material evidence has been received to reopen a previously denied claim of entitlement to service connection for sleep apnea. 

However, as discussed above, related to the Veteran’s claim of entitlement to service connection for migraine headaches, by a February 2018 rating decision, a DRO determined that the Veteran had continuously prosecuted his claim, considering his November 2012 claim, denied by the September 2013 rating decision, with notice to the Veteran in October 2013, with his September 2014 submission of relevant medical evidence as to his claim of entitlement to service connection for sleep apnea. The same argument applies to the claim of entitlement to service connection for sleep apnea. 

Record of a December 2005 private sleep study indicates that the Veteran was diagnosed with obstructive sleep apnea. The first element required for service connection, the existence of a present disability, is thus met.

The Veteran’s service treatment records are silent for complaint, treatment, or diagnosis of sleep apnea, or symptoms of such. However, the Veteran has offered lay evidence of in-service symptoms of sleep apnea. In an April 2017 statement, the Veteran’s spouse, to whom he was not married during service, reported that the Veteran’s mother, prior to her death, asserted that the Veteran did not have episodes of sleep during which we would snore very loudly then repeatedly stop breathing prior to his enlistment into service. In a January 2018 statement, the Veteran reported that during service he would just doze off whenever he sat down and would wake up in a panic from not breathing and choking.

The Veteran is competent to report his in-service experiences dozing off whenever he sat down and waking in a panic not breathing and choking, and the Veteran’s spouse is competent to report as to what she was told by the Veteran’s deceased mother as to his sleep hygiene prior to enlistment into service. Layno, 6 Vet. App. 465, 470. There is no indication that the Veteran and his spouse are not credible in this regard. Thus, resolving all doubt in favor of the Veteran, the Board finds that the lay evidence offered is sufficient to establish the second element required for service connection, an in-service incurrence or aggravation of a disease or injury.

The third element required for service connection, a causal relationship between the present disability and the disease or injury incurred or aggravated during service, is also met. In a May 2014 statement, one of the Veteran’s private treatment providers at a sleep specialty practice, confirmed, resultant to additional sleep study, the Veteran’s diagnosis of obstructive sleep apnea. She cited the Veteran’s previous history and diagnosis of the same since 2005 and characterized such as a long-standing problem. She reported that upon further questioning, it is evident that the Veteran most likely had the symptoms of sleep apnea during service. She reasoned that the diagnosis of sleep apnea was not widely made until the late 1990s, so in all likelihood, the Veteran’s symptoms were missed on examination.

In a February 2018 DBQ, a VA examiner opined that it was less likely than not that the Veteran’s obstructive sleep apnea was related to service. The examiner discussed that the Veteran’s service treatment records were silent for complaints of sleep apnea, and the first record of such was dated in 2005, twenty-four years after service. The examiner considered the May 2014 private opinion that the Veteran’s sleep apnea was likely missed on prior examinations due to the diagnosis not being widely made until the late 1990s, and asserted that if the Veteran’s symptoms had been present during service, they would not have been evaluated for sleep apnea since studies were not routinely performed until the 1990s, however, his symptoms were not noted in his service treatment records. The examiner noted the Veteran’s weight at enlistment into service as 170, his weight at separation from service as 181, and his weight in 2011 as 253. The examiner asserted that obstructive sleep apnea appears to be rising due to rising rates of obesity, and risk factors for such include advancing age, male gender, obesity, and tissue abnormalities, as well as smoking, family history, and nasal congestion.

Greater weight may be placed on one physician’s opinion over another depending on factors such as reasoning employed by the physicians and whether or not and the extent to which they reviewed prior clinical records and other evidence. Gabrielson v. Brown, 7 Vet. App. 36 (1994). The probative value of a medical opinion is generally based on the scope of the examination or review, as well as the relative merits of the expert’s qualifications and analytical findings, and the probative weight of a medical opinion may be reduced if the examiner fails to explain the basis for an opinion. Sklar v. Brown, 5 Vet. App. 140 (1993).

While it appears that the private treatment provider who submitted the May 2014positive etiological opinion did not review the claims file. However, it does not appear that there was evidence in the claims file that she did not consider that would be required in order to offer an adequate etiological opinion. Specifically, of record are the Veteran’s service treatment records, silent for complaint, treatment, or diagnosis of sleep apnea, or symptoms thereof, evidence of the Veteran’s post-service diagnosis of obstructive sleep apnea, and his lay statements, and those of his spouse, as to in-service symptoms. While she did not review the Veteran’s service treatment records, her opinion spoke to the fact that such were silent for in-service symptoms, as she asserted that such symptoms likely missed on examination due to the fact that sleep apnea was not yet widely diagnosed in that era. The Board finds no basis upon which to reduce the probative value of the May 2014 private etiological opinion.

The VA examiner in February 2018 did not consider the Veteran’s lay statements, as those of his spouse, of in-service symptoms. The examiner recited the contents of the April 2017 lay statement from the Veteran’s spouse, however, the examiner concluded that the Veteran was not married to his spouse at the time of his service. The examiner did not consider that the Veteran’s spouse asserted that she had been told by the Veteran’s deceased mother that the Veteran did not have symptoms of sleep apnea prior to enlistment into service. It appears that the examiner based their opinion on the fact that the Veteran’s service treatment records were silent for complaint, treatment, or diagnosis of sleep apnea, or symptoms thereof. The negative VA etiological opinion is thus of little probative value, as it was made without consideration of the Veteran’s lay statements, and those of his spouse, as to in-service symptoms. See Dalton v. Nicholson, 21 Vet. App. 23, 39-40 (2007).

(Continued on the next page)

There is thus probative evidence of currently diagnosed obstructive sleep apnea, in-service symptoms of dozing off whenever the Veteran sat down and then waking in a panic not breathing and choking, and a relationship between the Veteran’s obstructive sleep apnea and service. The preponderance of the evidence supports the Veteran’s claim of entitlement to service connection for obstructive sleep apnea. As such, the claim is granted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, supra. 

 

P.M. DILORENZO

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Purdum

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.