# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-2879

ROBERT M. EUZEBIO, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 30, 2019)                                         Decided August 22, 2019)

*April Donahower*, with whom *Linden K. Nash* was on the brief, both of Providence, Rhode Island, for the appellant.

*Lance Steahly*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Kenneth A. Walsh*, Deputy Chief Counsel; and *Kelly L. Grosshuesch* (non-attorney practitioner), were on the brief, all of Washington, D.C., for the appellee.

Before ALLEN, MEREDITH, and FALVEY, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court. ALLEN, *Judge*, filed a dissenting opinion.

MEREDITH, *Judge*: The appellant, Robert M. Euzebio, through counsel appeals a July 20, 2017, Board of Veterans' Appeals (Board) decision that denied entitlement to disability compensation for benign thyroid nodules, including as due to exposure to Agent Orange (AO) or water contaminants at Camp Lejeune, on presumptive and direct bases. Record (R.) at 1-14. The appellant does not raise any argument concerning the Board's denial of entitlement to disability compensation on a presumptive basis. Therefore, the Court finds that he has abandoned his appeal of this issue and will dismiss the appeal as to the abandoned issue. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was submitted to a panel of the Court, with oral argument, to address whether the National Academies of Sciences, Engineering & Medicine's (NAS) report, *Veterans and Agent Orange: Update 2014* (10th Biennial Update 2016) (hereinafter 2014 Update) was constructively before the Board when it denied entitlement to disability

compensation for benign thyroid nodules. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990) (precedential decisions are warranted in cases that "apply an established rule of law to a novel fact situation"). For the reasons discussed below, the Court holds that the 2014 Update was not constructively before the Board and the appellant has not demonstrated prejudicial error in the Board's decision to decline to obtain a medical nexus opinion. Accordingly, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Navy from February 1966 to October 1969, including service in Vietnam. R. at 399. He also attended a training course at Camp Lejeune in North Carolina. R. at 24-25, 118. In April 2011, a private physician found the appellant's thyroid to be palpable, R. at 400, and another private physician diagnosed a benign thyroid nodule in May 2011, R. at 401-08. Later that month, the appellant filed a disability compensation claim for that condition and asserted that he believed it was related to AO exposure in Vietnam. R. at 409-13. In August 2011, a private physician noted the following: "[The appellant] is known to have some nodules in the thyroid felt to be related to [AO] exposure in Viet[n]am. This is the first he has mentioned this to me." R. at 320.

A VA regional office (RO) denied entitlement to disability compensation in September 2011. R. at 375-81. The appellant disagreed with the decision and requested a VA examination to evaluate whether his benign thyroid nodules are related to service. R. at 351, 354. He later perfected his appeal, asserting that he believed his claimed condition is related to AO exposure in Vietnam and to contaminated water at Camp Lejeune because he has no family history of thyroid problems. R. at 66. The appellant reiterated at his January 2017 Board hearing that he believed his benign thyroid nodules are related to AO exposure because herbicides are known to cause "many different [conditions]" and no one in his family has had a thyroid condition. R. at 24; *see* R. at 22.

On July 20, 2017, the Board denied entitlement to disability compensation for benign thyroid nodules, including as due to exposure to AO or water contaminants at Camp Lejeune. R. at 1-14. Relevant to the issues raised here on appeal, the Board "acknowledge[d] that the [appellant had] not been afforded a VA examination with respect to this case," but determined that the duty to assist was satisfied. R. at 5-6. In discussing the four-part test set forth in *McLendon v. Nicholson*,

20 Vet.App. 79, 81 (2006), for whether an examination is warranted,[1] the Board noted that the appellant had asserted that his benign thyroid nodules were related to exposure to AO while serving in Vietnam and drinking contaminated water at Camp Lejeune. R. at 6-7. However, the Board discounted the probative value of these statements because it found that the appellant was not competent to opine on nexus. R. at 7. The Board thus determined that the appellant's conclusory generalized statements were "insufficient to meet even the low burden triggering VA's duty to assist in providing an examination and medical opinion." *Id.*

The Board proceeded to deny entitlement to disability compensation on a direct basis because there was no "competent evidence indicating a causal link between the [appellant's] thyroid disorder and military service." R. at 11-12. In reaching that determination, the Board noted that the service treatment records were silent for a thyroid disability; the appellant's "thyroid nodules were first observed in April 2011, more than 40 years after military service"; and the appellant was not competent to provide a nexus opinion. R. at 11. The Board also found that, although the August 2011 private treatment record contained a notation that the appellant was "known to have [thyroid nodules], felt to be related to AO exposure in Vietnam," the physician "immediately note[d] that this . . . was the first time the [appellant] had mentioned this." *Id.* The Board determined that it was "more likely" that the suggestion of a nexus was "made by the [appellant] and relayed to the physician, rather than a conclusion formed by [a medical professional]," and, therefore, the physician's mere notation of the appellant's theory did not render the appellant's statements competent or any more probative. R. at 11-12. This appeal followed.

## II. ANALYSIS

### A. The Parties' Arguments

The appellant argues that the Board erred in determining that the Secretary's duty to assist did not require VA to afford him a medical examination to address whether there is a nexus

---

[1] The four-part test set forth in *McLendon* requires the following:

(1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim.

20 Vet.App. at 81.

between his benign thyroid nodules and exposure to AO in Vietnam or contaminated water at Camp Lejeune. Appellant's Brief (Br.) at 5-11; Reply Br. at 1-7. In that regard, he contends that the Board failed to consider and discuss "all evidence and material of record and applicable provisions of law and regulation," 38 U.S.C. § 7104(a), including the 2014 Update; applied an incorrect legal standard; and provided an inadequate statement of reasons or bases. Appellant's Br. at 5-11; Reply Br. at 1-7.

He maintains that, had the Board considered the 2014 Update, it would have found the third *McLendon* element satisfied—an "indication" that his benign thyroid nodules "may be associated with . . . service"—and afforded him a medical examination. Appellant's Br. at 6-8 (citing *McLendon*, 20 Vet.App. at 81). The appellant argues that the 2014 Update was constructively before the Board because the Secretary knew of the report's content. Appellant's Br. at 8 (citing a Nov. 1, 2017, VA press release and a Summer 2017 AO Newsletter); *see* Appellant's Mar. 5, 2019, Notice of Supplemental Authorities, Exhibit 1 (BOARD OF VETERANS' APPEALS, U.S. DEP'T OF VETERANS AFFAIRS, THE PURPLEBOOK, Version 1.0.2 (Sept. 2018) (hereinafter THE PURPLEBOOK)).

The Secretary counters that, even assuming that he or the Board knew that the 2014 Update existed and contains general information relevant to the thyroid, it cannot be reasonably expected to be before the Board here because the 2014 Update was "not specific" to the appellant's claim. Secretary's Br. at 14-15; *see* Oral Argument at 37:30-38:04, *Euzebio v. Wilkie*, U.S. Vet. App. No. 17-2879 (oral argument held May 30, 2019), https://www.youtube.com/watch?v=rVqkuWIP Pnw&feature=youtu.be. He asserts that the only potential relationship between the 2014 Update and the appellant's claim is that the report "generally discussed the relationship between hypothyroidism and herbicide exposure and [the a]ppellant[] . . . alleges that his [benign] thyroid [nodule] condition is related to his herbicide exposure." *Id.* at 14. However, he contends that this relationship is "too strained" for the 2014 Update to be reasonably before the Board in "every case involving thyroid conditions and herbicide exposure." *Id.* at 13-14 (citing *Monzingo v. Shinseki*, 26 Vet.App. 97, 103 (2012) (per curiam)).

In his reply brief, the appellant asserts that, because his claim was based in part on exposure to herbicides, 38 U.S.C. § 1116 "put the Board on notice" of the existence of all NAS reports and their applicability to his claim. Reply Br. at 5. He contends that all NAS reports are constructively before the Board "in cases in which herbicide exposure has been conceded" because, pursuant to

4

section 1116, the reports are prepared for and commissioned by VA and it would not be unduly burdensome for the Board to consider the reports in these limited circumstances. *Id.* at 6. He further argues that the 2014 Update bears a direct relationship to his disability compensation claim for benign thyroid nodules because it demonstrates that "herbicides can affect the thyroid." *Id.* at 5; *see id.* at 7 (citing *Monzingo*, 26 Vet.App. at 103).

## B. Constructive Possession

As noted above, this matter was referred to a panel to address whether the 2014 Update was constructively before the Board such that it had an obligation to address the report as part of its *McLendon* analysis. Neither party disputes that the 2014 Update (1) was created for VA pursuant to a congressional mandate, which directed the Secretary to enter into an agreement with the NAS to review and summarize scientific evidence concerning the association between exposure to herbicides used in Vietnam during the Vietnam era and diseases suspected to be associated with such exposure, *see* Agent Orange Act of 1991, Pub. L. No. 102-4, §§ 2-3, 105 Stat. 11, 11, 13-14 (Feb. 6, 1991) (codified in part at 38 U.S.C. § 1116); (2) was published in 2016, prior to the Board decision on appeal; and (3) reflects that there is "limited or suggestive evidence of an association between exposure to [herbicides] and hypothyroidism," 2014 Update at Frontmatter, 898; *see* Appellant's Br. at 7; Secretary's Br. at 13-14.

This Court is precluded by statute from considering any material that was not contained in "the record of proceedings before the Secretary and the Board." 38 U.S.C. § 7252(b); *see Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990) (holding that review in this Court shall be on the record of proceedings before the Secretary and the Board); *see also Kyhn v. Shinseki*, 716 F.3d 572, 576-78 (Fed. Cir. 2013) (holding that the Court contravenes the jurisdictional requirements of section 7252(b) by considering extrarecord evidence). In that regard, the Court's authority "is limited to reviewing the correctness of the Agency's factual and legal conclusions based on the record before the agency *at the time of its decision.*" *Bonhomme v. Nicholson*, 21 Vet.App. 40, 43 (2007) (per curiam order). Thus, before the Court may address the merits of whether the Board should have considered the 2014 Update in its *McLendon* analysis, it must first determine whether the 2014 Update was before the Board.

*1. Development of The Constructive Possession Doctrine*:
Bell, Bowey, Goodwin,[2] *and* Monzingo

In *Bell v. Derwinski*, the Court held that documents that are not actually in the record before the Board may be deemed constructively before the Board because the Court could not "'accept the Board being "unaware" of certain evidence, especially when such evidence is in possession of . . . VA, and the Board is on notice as to its possible existence and relevance.'" 2 Vet.App. 611, 612 (1992) (per curiam order) (quoting *Murincsak v. Derwinski*, 2 Vet.App. 363, 372-73 (1992)). *Bell* provided that items are constructively part of the record before the Secretary and the Board if the "'items were clearly generated by' . . . VA or the 'item was submitted to . . . VA by [the] appellant as part of [the] claim', *and* . . . the documents pre[-]date the [Board decision] on appeal to the Court"; or, alternatively, the item is "'within the Secretary's control *and* . . . could reasonably be expected to be a part of the record.'" *Bowey v. West*, 11 Vet.App. 106, 108 (1998) (emphasis added) (quoting *Bell*, 2 Vet.App. at 612-13).

In the 1998 *Bowey* decision, the Court narrowed the reasonable expectation element of the constructive possession doctrine to include a relationship requirement—the document cannot be "too tenuous[ly]" related to the claim before the Board. *Id.* at 109. The Court held that a report from the National Institute for Occupational Safety and Health and a medical treatise, although referenced in expert opinion letters of record, were "too tenuous[ly]" connected to the appellant's case. *Id.* The Court rejected the appellant's argument that the Board must be in possession of the report because it had relied on it in past decisions and concluded that it was unreasonable to expect (1) that the Board "constructively possesses all evidence generally relied upon by similar claims as long as the material is referenced somewhere in the appellant's file" or (2) that, if the Board "possesses reference materials, then any reference to that material makes it part of the record." *Id.* The Court further explained that a claimant cannot place materials "'in the record'" by the "mere allusion to them without regard to whether they were, *in fact*, before the Board or were considered by the Board in reaching its decision." *Id.* (emphasis added). Later that year, the Court extended the "too tenuous" limitation and held in part that documents *generated by VA and dated prior to the Board decision* were too tenuously related to the appellant's claim to be constructively before the Board because they related "to claims for VA benefits for an individual other than the appellant

---

[2] *Bell*, *Bowey*, and *Goodwin* arose in the context of disputes regarding the record on appeal.

6

and . . . were not submitted to VA with regard to the appellant's claim." *Goodwin v. West*, 11 Vet.App. 494, 496 (1998) (per curiam order).

In the Court's 2012 *Monzingo* decision, it emphasized that, "even when a document is generated by VA, it will not be considered constructively before the Board in a particular claimant's case unless the document has a *direct relationship* to the claimant's appeal." 26 Vet.App. at 102 (emphasis added) (interpreting *Goodwin*, 11 Vet.App. at 496). Based on that principle, the Court held that, although (1) a 2006 Noise and Military Service report "supported by a [statutorily mandated] contract between the [NAS] and VA and submitted to VA" and (2) a 1982 report on tinnitus prepared by the National Research Council contained information that was generally relevant to the type of disability on appeal, the reports were not constructively before the Board. *Id.* at 101-03.

Specifically, regarding the 2006 report, the Court reasoned that "noting that VA sponsored and received a copy of the report" did not sufficiently demonstrate that the Board constructively possessed the report, especially when the report's findings did not necessarily reflect VA's or other sponsoring organizations' views. *Id.* at 103. Moreover, the Court noted that (1) "the report [was] not specific to [the appellant]" and (2) "the only connection between the report and [the appellant was] that the report generally discusse[d] hearing loss as it relates to military service and [the appellant's] claim [was] for benefits for hearing loss that he assert[ed] was incurred in military service." *Id.* The Court explained that "[t]his connection [wa]s too tenuous to reasonably support any expectation that [the 2006] Noise and Military Service [report] would be part of the record before the Board in every hearing loss or tinnitus claim" or deemed constructively before the Board in the appellant's case. *Id.* (citing *Goodwin*, 11 Vet.App. at 496; *Bowey*, 11 Vet.App. at 109). Regarding the 1982 report, the Court explained that it was not constructively before the Board because (1) it was "not prepared for or commissioned by VA" and (2) it bore "no relationship to [the appellant's] claim other than its general discussion of the relationship between tinnitus and hearing loss." *Id.* Thus, it was too tenuously related to the claim, "absent [the appellant's] submission of the document to VA or his request that it be obtained." *Id.* (citing *Goodwin*, 11 Vet.App. at 496; *Bowey*, 11 Vet.App. at 109; *Bell*, 2 Vet.App. at 612-13).

In sum, as the constructive possession doctrine developed, the requirement that the document not relate too tenuously to the appellant's claim grew in significance, to the point where, today, an appellant must show that there is a *direct relationship* between the document and his or

7

her claim to demonstrate that the document was constructively before the Board, even if the document was generated for and received by VA under a statutory mandate. *See Monzingo*, 26 Vet.App. at 101-03; *Goodwin*, 11 Vet.App. at 496; *Bowey*, 11 Vet.App. at 108-09. The document must bear a closer relationship to the appellant beyond providing general information related to the type of disability on appeal, *see Monzingo*, 26 Vet.App. at 103, or merely being referenced in other evidence of record or relied upon by appellants in similar cases, *see Goodwin*, 11 Vet.App. at 496; *Bowey*, 11 Vet.App. at 108-09.

## 2. Application

Here, the appellant does not assert, nor does the record reflect, that he submitted the 2014 Update to the Board or requested that the Board consider it in relation to his claim. Rather, he argued in his initial brief that the Secretary had knowledge of the report[3] and that it was potentially relevant to his claim because it addresses a relationship between a thyroid condition (hypothyroidism) and AO exposure. Appellant's Br. at 7-8. It is undisputed that VA generally knew of the existence of the 2014 Update at the time of the decision on appeal. *See* Oral Argument at 28:18-25. However, our caselaw is clear that, even if VA is aware of a report and the report contains general information about the type of disability on appeal,[4] that is insufficient to trigger the constructive possession doctrine; there must also be a *direct relationship* to the claim on appeal. *Monzingo*, 26 Vet.App. at 102. Moreover, as in *Monzingo*, the requirement for a direct relationship is not satisfied simply because the report at issue was obtained by VA pursuant to a statutory mandate. *Id.* at 103 (holding that where "VA sponsored and received a copy" of the disputed report pursuant to congressional mandate and the report "generally discusse[d]" the disability for which the appellant sought service connection, "[t]his connection is too tenuous to reasonably support

---

[3] To the extent that the appellant relies on documents that post-date the Board's decision, such as *The Purplebook* and the November 2017 VA press release, to demonstrate that VA and the Board were aware of the 2014 Update, the Court lacks jurisdiction to consider those documents. *See Bonhomme*, 21 Vet.App. at 43.

[4] In *Monzingo*, there was no dispute that the reports at issue generally discussed the relevant disability on appeal in that case: bilateral hearing loss. Here, it is undisputed that the 2014 Update discusses hypothyroidism and the claim on appeal is for benign thyroid nodules. Thyroid nodules are defined as "pathological nodules in the thyroid gland, often filled with colloid; some are indicative of adenoma or carcinoma" and hypothyroidism is defined as "deficiency of thyroid activity, characterized by decrease in basal metabolic rate, fatigue, and lethargy; if untreated, it progresses to myxedema." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 907, 1283 (32d ed. 2012). The appellant does not argue that hypothyroidism is the same condition as benign thyroid nodules. Rather, at oral argument, his counsel clarified that whether there is a sufficient relationship between hypothyroidism and benign thyroid nodules is a medical question and that the 2014 Update's findings and conclusions "go to the nexus question on the merits of [the] service-connection claim." Oral Argument at 15:22-16:17.

any expectation" that it would be part of the record before the Board). Accordingly, we conclude that the 2014 Update was not constructively part of the record before the Board. *See id.*; *Goodwin*, 11 Vet.App. at 496; *Bowey*, 11 Vet.App. at 108-09.

To hold otherwise would not only contravene our Court's caselaw but would undermine the Court's jurisdictional obligation to base its review on the record of proceedings before the Board, by allowing the Court to consider and find Board error based on any congressionally mandated reports submitted to VA in connection with its nationwide system for administering disability benefits, when the Board was not requested to and did not address such evidence. *See Bowey*, 11 Vet.App. at 109 (warning that to accept that the Board's mere possession of reference materials—"without regard to whether they were, in fact, before the Board or were considered by the Board in reaching its decision"—is sufficient to deem those reference materials constructively before the Board in an individual appellant's claim adjudication would "ill serve the [Court's] orderly review of the decision below and the actual record upon which that decision was based" that 38 U.S.C. § 7252(b) requires).

Further, the Court is not inclined to address on the merits the appellant's arguments raised for the first time in his reply brief and at oral argument to the effect that, because 38 U.S.C. § 1116 once required the Secretary to obtain and consider NAS reports in creating presumptions of service connection based on herbicide exposure,[5] the Updates should be constructively before the Board in all cases where herbicide exposure is conceded. *See* Reply Br. at 5-7. However, we note that, in *Monzingo*, the Court not only concluded that there was too tenuous of a relationship to a congressionally mandated NAS report where it was "not specific to [the appellant]" but also declined to create a broad rule that the reports at issue should be considered constructively before the Board in "every hearing loss or tinnitus claim." 26 Vet.App. at 103. We further note that the appellant has not pointed to any language in section 1116 suggesting that Congress intended for VA to consider the reports in adjudicating individual claims. Finally, although the appellant, after the completion of briefing, suggested that the Board had cited to the 2014 Update in its decision, *see* Appellant's May 22, 2019, Notice of Intended Reliance at 1, the decision referred only to the

---

[5] This congressional requirement expired in September 2015. *See* 38 U.S.C. § 1116(e). Any requirements thus imposed under section 1116 related to the NAS reports expired before the 2014 report and the Board decision were issued.

9

Secretary's general obligation pursuant to section 1116 to consider NAS reports in creating presumptions of service connection, R. at 9.

### 3. Response to the Dissent

The dissent criticizes the majority's opinion as "purely legal," *post* at 15-16, yet offers no authority to depart from controlling precedent and instead decide this matter, as the dissent would do, based solely on policy considerations. *Ministerio Roca Solida v. United States*, 778 F.3d 1351, 1356 (Fed. Cir. 2015) (noting that "[p]olicy [c]onsiderations [d]o [n]ot [a]llow [t]his Court to [i]gnore [b]inding [p]recedent").[6] The Court's jurisdictional statute limits what we may consider in reviewing an appeal and our caselaw, which the dissent endorses, defines what may be considered constructively before the Board and, thus, before the Court. In that regard, this case is not unique or different; rather, a straightforward application of *Monzingo* leads to the conclusion that the 2014 Update was not constructively before the Board. It is not specific to the appellant and the only connection between the report and the appellant is that it generally discusses whether a myriad of conditions may be related to AO and the appellant was exposed to AO. *Monzingo* unequivocally held that a similar connection, based on a report also created pursuant to a congressional mandate, was too tenuous to reasonably expect the document to be before the Board.

Although the dissent would prefer to redefine and expand the "direct relationship" requirement of the constructive possession doctrine based on the notion that NAS reports hold a "special place in the veterans benefits system," *post* at 18, that view is contrary to established caselaw and lacking statutory support.[7] And it is this view that seemingly drives the dissent's willingness to entertain and build on the appellant's late-raised argument—that the Board mentioned in its decision the 2014 Update by generally referring to section 1116—and consider materials that post-date the decision on appeal.

---

[6] To be sure, the dissent cites to section 1116, but nothing in the statute suggests that Congress meant for VA to use the NAS reports for anything beyond considering new presumptive conditions; adjudicative uses for the NAS reports are the dissent's own creation. But, "[t]he role of [a] Court is to apply the statute as it is written—even if we think some other approach might accord with good policy." *Burrage v. United States*, 571 U.S. 204, 218 (2014) (internal quotation marks and brackets omitted).

[7] In that regard, we find no meaningful distinction between the congressionally mandated NAS report considered in *Monzingo* and the NAS report at issue here. *See Monzingo*, 26 Vet.App. at 102-03 (noting that the disputed report, *Noise and Military Service: Implications for Hearing Loss and Tinnitus*, was supported by a contract between NAS and VA). As the dissent acknowledges, at the time of the Board's decision, NAS was required to submit the 2014 Update, but VA was not required to comment on the report's content.

In sum, regardless of whether there may be policy reasons for considering NAS reports in *all* claims based on AO exposure, "'[w]e are duty bound to follow the law . . . unless and until it is changed.'"[8] *Ministerio*, 778 F.3d at 1356 (quoting *Korczak v. United States*, 124 F.3d 227, 1997 WL 488751, at *2 (Fed. Cir. 1997) (unpublished table decision)). Thus, we rely on legal considerations and leave policy questions to the legislature. *See In re Ferguson*, 558 F.3d 1359, 1366 n.7 (Fed. Cir. 2009) ("The essence of the [dissent] is an argument premised on policy and philosophical grounds. We disagree with this approach, as it is not the role of courts to make such arguments but rather the responsibility of Congress.").

## C. Duty to Assist

### 1. Law

To satisfy the duty to assist, VA must provide a medical examination where there is "competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability" and the evidence "indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service," but there is insufficient "medical evidence for the Secretary to make a decision on the claim." 38 U.S.C. § 5103A(d)(2); *see McLendon*, 20 Vet.App. at 81; 38 C.F.R. § 3.159(c)(4) (2017).[9] The third *McLendon* element "requires only that the evidence 'indicates' that there '*may*' be a nexus between the [first] two [elements] . . . [and t]his is a low threshold." *McLendon*, 20 Vet.App. at 83 (emphasis added) (quoting 38 U.S.C. § 5103A(d)(2)(B)).

In *Waters v. Shinseki*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that the Board erred when it required competent evidence to demonstrate that there may be an indication of a nexus. 601 F.3d 1274, 1277 (Fed. Cir. 2010) (citing 38 U.S.C. § 5103A(d)(2)(B)). However, the Federal Circuit also found that the error was harmless because,

---

[8] Of course, nothing in our decision limits what evidence *the Board* may *sua sponte* take into account in deciding appeals but, rather, is limited to determining what evidence *the Court* may consider even though it was not submitted to or addressed by the Board.

[9] Effective February 19, 2019, VA amended portions of § 3.159 to comply with the appeals processing changes mandated by the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). *See* VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 169 (Jan. 18, 2019) (final rule); VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (notification of effective date). However, these regulatory changes apply only to claims in which an initial decision is issued after February 19, 2019, unless a "legacy" claimant elects to use the modernized review system. 84 Fed. Reg. at 177. There is no assertion that the new rules should apply here; thus, the Court's analysis is confined to the law in effect at the time of the Board's July 2017 decision.

aside from the appellant's lay assertions of a nexus, there was no evidence that the disability was related to service. *Id.* The Federal Circuit explained that, if the appellant's "conclusory[,] generalized" lay statements that "his service illness caused his present [disability] was enough to entitle him to a medical examination," VA would be required to provide examinations "routinely and virtually automatically" in every veteran's case because "all veterans could make such a statement." *Id.* at 1278. The Federal Circuit concluded this would be inconsistent with section 5103A's "carefully drafted . . . standards governing the provision of medical examinations." *Id.*

The Court may overturn the Board's determination that a medical examination is not necessary only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *McLendon*, 20 Vet.App. at 81. With regard to the Board's determination that *McLendon*'s third element was not met, although the underlying facts are subject to the "clearly erroneous" standard of review, "whether those facts 'indicate' that a current disability 'may be associated' with military service is a matter that is reviewed under the 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' standard of review." *McLendon*, 20 Vet.App. at 83 (quoting 38 U.S.C. § 7261(a)(3)(A)). When the Board considers whether a medical examination is necessary under section 5103A(d) and § 3.159(c)(4), it must provide a written statement of the reasons or bases for its conclusion, pursuant to 38 U.S.C. § 7104(d)(1), and, absent a finding of nonprejudicial error, vacatur and remand are warranted when it fails to do so. *Duenas v. Principi*, 18 Vet.App. 512, 517-18 (2004) (per curiam) (citing *Tucker v. West*, 11 Vet.App. 369, 374 (1998)); *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

### 2. Parties' Arguments

The parties agree that the first two elements of *McLendon* are satisfied, because there is competent evidence that the appellant has thyroid nodules and he is presumed to have been exposed to herbicides during service. Appellant's Br. at 6-7; Secretary's Br. at 7-8. However, they dispute whether the Board provided an adequate statement of reasons or bases for finding that the third element of *McLendon* was not satisfied. Having held that the 2014 Update was not before the Board, the Court need not address the appellant's argument that the Board should have considered whether the contents of that report satisfied the third element. The Court thus turns to the

12

appellant's arguments related to his lay statements and the August 2011 private physician's statement.

The appellant argues that the Board's finding that he lacks medical expertise to competently link his thyroid condition to AO exposure was not an adequate reason for concluding that the third element of *McLendon* had not been satisfied. Appellant's Br. at 5 (citing R. at 7). He further asserts that the Board erred when it found that his own assertion was the "*only*" evidence suggesting a link; he contends that the August 2011 treatment record also suggested a link and that the Board's reason for rejecting the physician's statement as a nexus opinion is not a sufficient basis to reject it under *McLendon* because it would impose too high an evidentiary standard. *Id.* at 9-10 (citing R. at 11-12). The Secretary counters that (1) although competent evidence is not required, the appellant's "bare allegation of a link" is insufficient to satisfy the third element of *McLendon* and (2) the Board's finding that the notation on the August 2011 treatment record was not based on a medical professional's judgment was not clearly erroneous. Secretary's Br. at 9-12 (citing *Waters*, 601 F.3d at 1278; *McLendon*, 20 Vet.App. at 83).

In his reply brief, the appellant argues that the Board "must do more than point to [his] lack of medical expertise before characterizing his statements as 'conclusory[,] generalized statements' that are insufficient to trigger the duty to assist." Reply Br. at 2 (quoting *Waters*, 601 F.3d at 1278). He contends that, to support his assertion of a nexus, he explained that he has no risk factors or family history of thyroid conditions and exposure to AO is known to have toxic effects. *Id.* at 2-3 (citing R. at 24-25). Further, regarding the August 2011 treatment record, he refines the argument presented in his opening brief to maintain that, although the Board rejected the physician's statement as insufficient to establish a nexus and support service connection, the Board did not explain why it was insufficient to meet the lower *McLendon* threshold to trigger the duty to assist. *Id.* at 4 (citing R. at 7, 11-12).

### 3. Application

Here, the Board discounted the probative value of the appellant's assertions of a nexus because it found that he was not competent to opine on nexus and determined that his "conclusory generalized statements" were "insufficient to meet even the low burden triggering VA's duty to assist in providing an examination and medical opinion." R. at 7. The Court agrees that merely pointing to the appellant's lack of medical expertise is not an adequate reason for concluding that the third element of *McLendon* had not been met. But, as reflected above, the Board did more; it

found the appellant's conclusory generalized statements insufficient pursuant to *Waters* and the appellant did not challenge that finding in his opening brief.

In any event, to the extent that the Board erred in requiring *competent* evidence to establish the indication of a nexus under *McLendon*'s third element and failing to address whether the August 2011 treatment record indicated that there may be association between the appellant's thyroid condition and exposure to AO, the appellant has not demonstrated how either error is prejudicial because his lay allegations of a nexus alone are not sufficient to satisfy *McLendon*'s low threshold. *See Waters*, 601 F.3d at 1277-78 (holding that, because the claimant had not shown any factual basis for his claim, "any possible error by the Board in using the wrong standard under [the nexus element of the *McLendon* test] could not have prejudiced [the claimant]"); *see also* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error). In that regard, he does not cite any record evidence indicating that he does not have risk factors for a thyroid condition. *See* Reply Br. at 2-3. The record contains only his statements that AO is known to have toxic effects and that he has no family history of thyroid problems. *See* R. at 22, 24, 66, 409. As noted above, the Federal Circuit rejected similar generalized statements. *See Waters*, 601 F.3d at 1278. Were the Court to accept the appellant's argument here, it would essentially require VA to provide medical examinations "routinely and virtually automatically" to all veterans that have been exposed to AO, regardless of the claimed disability and any known association to such exposure. *Id.* at 1278-79. Had Congress intended to create an exception to the statutory requirements of section 5103A(d) for veterans exposed to AO, it could have so provided. *See id*.

Moreover, although the Board did not discuss the August 2011 private treatment record in its *McLendon* analysis, *see* R. at 5-6, 10-11, it found, in deciding the claim on the merits, that the physician had merely recorded the appellant's lay statement that thyroid nodules were "felt to be related to AO exposure" rather than providing a medical conclusion. R. at 11-12. On appeal, the appellant asserts that the physician's notation is sufficient to indicate a potential nexus, but he does not dispute that Board finding. As a result, he has not shown that the record contains any factual basis for his claim apart from his general lay statements, which, as noted above, are insufficient to satisfy *McLendon*'s low threshold. The Court therefore finds that the appellant has failed to meet

14

his burden to demonstrate how any Board error was prejudicial. *See Waters*, 601 F.3d at 1277-78; *see also* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409.

Further, to the extent that the appellant argues that the Board erred when it declined to obtain a medical opinion to evaluate whether there is a nexus between his benign thyroid nodules and exposure to contaminated water at Camp Lejeune, Reply Br. at 7, his argument is undeveloped. He asserts only that the fact that "the water at Camp Lejeune is known to have been toxic is sufficient in and of itself to warrant an examination, as it raises a possibility that it was the cause of the appellant's disability," *id.* (citing 38 C.F.R. § 3.307(a)(7) (2018)), but he does not explain why, in light of section 5103A's requirements and *Waters*, that is sufficient. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (per curiam) ("The Court requires that an appellant plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments."), *vacated on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order); *see also Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court is unable to find error when arguments are undeveloped). Therefore, the Court will not further entertain this argument.

Accordingly, because all the appellant's remaining arguments pertain to whether he was entitled to a medical examination to evaluate a possible medical nexus between his benign thyroid nodules and exposure to AO, and he has not demonstrated prejudicial error with regard to that determination, the Court will affirm the Board's decision.

### III. CONCLUSION

The appeal of the Board's July 20, 2017, decision denying entitlement to disability compensation for benign thyroid nodules, including as due to exposure to AO or water contaminants at Camp Lejeune, on a presumptive basis is DISMISSED. After consideration of the parties' pleadings, oral argument, and a review of the record, the Board's decision denying entitlement to disability compensation for benign thyroid nodules, including as due to exposure to AO or water contaminants at Camp Lejeune, on a direct basis is AFFIRMED.

ALLEN, *Judge, dissenting*: I respectfully dissent from the Court's decision to affirm the Board's July 20, 2017, decision denying service connection for a thyroid condition. Specifically, I disagree with the majority's purely legal determination that the 2014 National Academy of

Sciences (NAS) *Agent Orange Update* (the "2014 NAS Update" or the "Update") was not before the Board either actually or constructively. Because I believe the 2014 NAS Update was before the Board one way or another, it should have considered whether the Update provided the necessary foundation to trigger the need for a nexus examination under *McLendon v. Nicholson*, 20 Vet.App. 79 (2006). I would, therefore, remand this matter for the Board to assess that question.

Soon enough I'll enmesh the reader in the facts of this case and the applicable law. That is, after all, what we judges do. But before that, I want to make clear the practical reality of today's decision with a thought experiment.[10]

Assume that there is a veterans law judge sitting in her office at the Board. She has two files before her on the desk.[11] One file is for Veteran Able. He served in Vietnam in 1969 and is seeking service connection for Condition X. The second file is for Veteran Baker. He too served in Vietnam in 1969. In fact, as luck would have it, he served in the same unit as Veteran Able at precisely the same time. And Veteran Baker has Condition X too and is seeking service connection for that ailment. Both these veterans are presumed to have been exposed to Agent Orange. *See* 38 U.S.C. § 1116(a)(1)(A); 38 C.F.R. § 3.307(a)(6)(iii) (2019).

Veteran Able has a savvy representative from a veterans service organization. That representative submits an NAS Update showing a connection between Agent Orange exposure and Condition X. It's not a definitive connection to be sure, but the Update "indicates" an "association" between Agent Orange and Condition X. The VLJ is not at all surprised to see the NAS Update. She has actual knowledge of its existence and what the Update is meant to do–show associations between diseases and herbicide exposure. She's adjudicated many cases in which she has reviewed the Update. In fact, she often cites the existence of NAS Updates in her decisions even when a veteran does not raise the issue. Veteran Able is in a very good position. He may simply be granted service connection or, at the very least, be entitled to a medical examination based on the information in the NAS Update.

The VLJ reviews Veteran Able's file after taking meticulous notes on the NAS Update. She prepares a decision remanding Veteran Able's claim for a medical nexus examination to determine

---

[10] The facts I use are not meant to mirror Mr. Euzebio's claim. I will turn to those facts soon enough. This vignette is meant only to illustrate the effects of today's decision.

[11] I recognize that VA has now gone paperless in many respects. But paper files make for a more compelling image.

whether Agent Orange caused Able's Condition X. Veteran Able's service has been honored as Congress wished and the Board has fulfilled its duty.

But the Board is a very busy place so the VLJ's work is not yet done. After finishing Veteran Able's case, she immediately picks up Veteran Baker's file. Unfortunately, Veteran Baker does not have a savvy representative; he's going it alone, as so many veterans do. Veteran Baker does not submit the NAS Update showing a connection between Agent Orange and Condition X. Nor does he mention the report. He doesn't even know the Update exists; his service was 40 years ago and he's not an expert on Agent Orange exposure. What is the VLJ to do? She knows the Update exists and that it contains important–indeed, dispositive–information, but it's in Veteran Able's file–inches away on her desk–not Veteran Baker's. She's in a pickle it seems.

In a pro-veteran, nonadversarial system, one would think this "problem" would be easily solved. The VLJ could assume that the Update, which she knows exists, is aware of its general content, and has just used, is constructively in Veteran Baker's file and proceed to adjudicate his claim for benefits. That seems logical. In other words, the VLJ could honor Veteran Baker's service as much as she did for Veteran Able. But that is not the world as it exists based on today's decision. The Court's answer to the problem I've posed is that the VLJ may ignore the Update she knows exists and that she has just read and rule against Veteran Baker. Respectfully, that can't possibly be the outcome of a rational system of adjudication, especially one designed to be pro-veteran and nonadversarial. No matter what mode of statutory or regulatory interpretation to which one subscribes, in my view it is impossible to justify this outcome.

I promised to turn to the law and facts, and I will do that now. Fear not; for better or worse, this will soon become a more traditional judicial opinion. However, I ask the reader to keep this thought experiment in mind. When traditional legal analysis leads to such a bizarre result–a result that one would be hard pressed to defend to a group of veterans to whom the question I posited was presented–one should see a very large, very bright red flag of warning. The Court today fails to heed that warning.

Turning to the more traditional mode of analysis, I accept the majority's recitation of the facts. *See ante at* 2-3. In addition, I have no quarrel with its comprehensive and well-written discussion of the law concerning the concept of constructive possession. *See ante at* 5-8. As an aside, this summary of the law as it stands will be useful for future cases regardless of my dissent and I endorse it. What it comes down to in this case, using the majority's definition of the law, is

17

whether the 2014 NAS Update has a "direct relationship" to the appellant's claim. This is where the majority and I part ways. Reaching the point that a "direct relationship" is required to have something constructively before the Board is not the end of the analysis. Rather, it is the beginning. What does it take to establish such a relationship? The majority appears to suggest that there is quite a rigorous test to show such a relationship and that, for all practical purposes, only evidence that directly names the veteran whose case is at issue would qualify. This cannot be what our constructive possession caselaw intended.

Before I explain why I disagree with the majority about the direct relationship question, there is an antecedent issue to address. It is not appropriate to "peek" at what a document says when considering whether it is constructively before the Board. The rule the Court adopts applies whether the Update is dispositive as much as it does if the Update is less so or even irrelevant. In other words, one can't defend the decision on the basis that the Update was not likely to trigger a *McLendon* analysis. That is a downstream issue. The majority seems to engage in such inappropriate peeking at one point in its decision.[12] I can't see how the particular associational strength of the relationship between a given disease and Agent Orange exposure that the Update discusses has anything to do with whether an Update is constructively before the Board and the majority does not explain how it does.

Turning back to the constructive possession question more specifically, I believe the 2014 NAS Update has the "direct relationship" to the appellant's claim necessary to place it constructively before the Board in this matter. As I noted, the Court has not provided a comprehensive definition of what a "direct relationship" is, in other cases or today. It's not enough to say that this case is different from others in which there has been a "direct relationship." After all, if that was the only question, there would be no need for a precedential opinion. What is required is an assessment of whether the NAS Updates, given their unique nature, have a "direct relationship" to Agent Orange exposure claims such as the one the appellant advances. I turn to that issue now. As I explain, these reports have a special place in the veterans benefits system that

_____

[12] *See ante* at 8, n. 4. As I've noted, it is premature to discuss the substance of the report at this stage. However, the matter may not be as straightforward as the majority suggests. A quick Internet search reveals that there may be some connection between hypothyroidism, the relevant condition in the 2014 NAS Update, and thyroid nodules, the appellant's condition. *See* AMERICAN THYROID ASSOCIATION, *Thyroid Nodules*, http://www.thyroid.org/thyroid-nodules. But this should be a question for the Board. However, the Board will never address it for Mr. Euzebio because of today's decision.

make them suited to being considered as having the required direct relationship to claims involving Agent Orange exposure.

Let's begin with what we know about these NAS Updates. Under 38 U.S.C. § 1116(b)(2), "the Secretary shall take into account . . . reports received by the Secretary from the National Academy of Sciences under section 3 of the Agent Orange Act of 1991." Originally, section 1116 required the Secretary to publicly address findings and determine if additional regulations were warranted with respect to new presumptions. However, those subsections ceased "to be effective on September 30, 2015." 38 U.S.C. § 1116(e). Therefore, the 2014 NAS Update, published in March 2016, was the first update that did not require comment in the *Federal Register*. But, VA read Pub. L. 107-103, which authorized the updates in the first place, to require an additional study, which resulted in the 2018 Update. *See Veterans and Agent Orange: Update 11* (2018) at 17-18.

In sum, at the time of the Board decision, VA was required by statute to receive the Agent Orange Updates but no longer had to publicly comment on them. That fact, however, does not diminish the important role congressional attention to Agent Orange exposure has for the question before the Court. The majority is certainly correct that Congress did not *require* VA to consider the reports in individual adjudications, *see ante* at 9, but that recognition does not mean that the congressional mandate to create those Updates is irrelevant to whether the Board *should* consider them under applicable law in certain individual cases. And for me, the congressional directive is critical in terms of the significance of these reports more generally. These are not the type of documents that are located somewhere in the bowels of VA, tucked away in the desk of some bureaucrat never to be read. They are documents that are important for the Agency because Congress made them so, expressly and unequivocally.

Second, we know that the Board is *actually aware* that the Updates exist. This is not a case in which one would need to ask the Board to somehow divine that a given document had been created. As the majority noted, the Secretary made clear during oral argument that the Board knows about the NAS Updates. *See ante* 8, n.3. This fact is quite significant. This is not something obscure or something that one could say only that the Board *should* have known. It is undisputed that the Board *actually knows* the Updates exist and that it knows what they are meant to do–provide scientific information about connections between Agent Orange exposure and certain medical conditions.

19

Third, the Board *actually referred* to NAS Updates in its decision in this case. *See* R. at 9. It is true, as the majority notes, that this reference was in the context of recognizing that Congress had mandated the reports for purposes of determining presumptive service-connection questions. *See ante* at 9. But the importance of this reference is that it underscores the Board's knowledge both of the existence of the Updates and that they contain–or could contain–information about connections between Agent Orange exposure and certain conditions. Plus, it seems quite odd to say that something the Board mentions in a decision (even if only as a matter of boilerplate) is not before the Board for purposes of assessing the question the Board is deciding there.

Fourth, we know that the Board has the procedures necessary to ensure that NAS Updates are considered in appropriate benefits claims. The appellant submitted *The PurpleBook* outlining a procedure to consult the NAS Updates in certain cases, even when a claimant does not identify them. I don't take that submission as some sort of "post-decision" evidence. *See ante* at 8 n.3. Rather, its importance is that it shows that the Board (1) knows of the NAS Updates–although that has been established in myriad other ways; (2) understands their importance in Agent Orange exposure matters; and (3) can establish methods for the use of the Updates in the adjudication process without excessive burden.

There is a fifth point. This one is more factual than legal. Most of the Court's precedents that established the foundation for the constructive possession doctrine were written in a time in which access to information was more restricted than in the Internet age.[13] In that time–one I remember clearly but my sons and law clerks know as well as they know the time when dinosaurs roamed the Earth–concerns about obtaining information buried in some files were quite legitimate. But to the extent that these concerns animated the results in those earlier cases on which the more recent decisions have been based, they must be reconsidered in light of the so-called information age.

Finally, I note that the majority suggests that considering the NAS Updates would "undermine the Court's jurisdictional obligation to base its review on the record of proceedings before the Board, by allowing the Court to consider and find Board error based on any congressionally mandated reports submitted to VA in connection with its nationwide system for administering disability benefits." *Ante* at 9. We would not be expanding our jurisdiction at all by

---

[13] *See Goodwin v. West*, 11 Vet.App. 494 (1998) (per curiam order); *Bowey v. West*, 11 Vet.App. 106 (1998); *Bell v. Derwinski*, 2 Vet.App. 611, 612 (1992) (per curiam order).

determining that the 2014 NAS Update was constructively before the Board. Rather, we would be applying established law to determine that it had the necessary "direct relationship" to the claim at hand. The majority disagrees with my position, and I respect that. However, the issue is not one of jurisdiction.

In the end, I believe the NAS Updates are constructively before the Board because they have a "direct relationship" to all claims based on Agent Orange exposure. My position is not, as the majority suggests, *see ante* at 10-11, one of policy. Rather, it is about how I understand the law to apply to the particular facts before us. Moreover, I am cognizant of the burden on the Board that decisions of this Court can impose. I do not mean to open the floodgates for what the Board must consider and I don't believe my position would do so. Not all evidence is the same. As George Orwell wrote in *Animal Farm*, "All animals are equal, but some animals are more equal than others."[14] The same is true here. The NAS Updates are unique–more equal than other government reports. We need not decide whether other things could also fall in this special category of animal. But to not recognize the special place of the NAS Updates in the VA benefits process turns a blind eye to reality. I respectfully dissent from the majority's decision in this matter.

---

[14] George Orwell, ANIMAL FARM, at 112 (1945), https://jgdb.com/literature/study-guides/book-animal-farm/quote-all-animals-are-equal-but-some-animals-are.