**John T. BOWEY, Appellant,**

v.

**Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.**

No. 97–303.

United States Court of Veterans Appeals.

March 4, 1998.

Before NEBEKER, Chief Judge, and
HOLDAWAY and STEINBERG, Judges.

## ORDER

PER CURIAM:

In August 1997, the appellant, John T. Bowey, counter designated two documents as part of the record on appeal (ROA): (1) a publication prepared for the Defense Nuclear Agency (DNA) by the National Institute for Occupational Safety and Health (NIOSH), entitled *Radiation Dose Reconstruction U.S. Occupation Forces in Hiroshima and Nagasaki, Japan, 1945–1946* [hereinafter "NIOSH report"]; and (2) an excerpt from Mettler and Upton, *Medical Effects of Ionizing Radiation* (2d ed.1995)[ hereinafter "Mettler treatise"]. The parties held an unsuccessful conference with the Court's Central Legal Staff in September 1997 to resolve the counter designation issue, and in October 1997 the Secretary moved to limit the ROA and to

stay proceedings pending a ruling on the motion. The Secretary argues that neither of the two counter-designated documents should be included in the ROA. The appellant filed an objection to the motion in November 1997.

The appellant served on active duty from February 1944 to May 1946 and from July 1946 to July 1948. During service, he participated in the occupation of Nagasaki after detonation of the atomic bomb. He now claims that his rectal cancer, which was first diagnosed in September 1989, was caused by in-service radiation exposure.

In April 1993, the DNA confirmed the appellant's presence in Nagasaki and reported that the maximum possible dose of radiation which any individual serviceman could have received was less than one rem. The DNA report referred to the NIOSH report.

In February 1996, the Department of Veterans Affairs (VA) Assistant Chief Medical Director for Public Health and Environmental Hazards (ACMD) reported by letter to the Department of Veterans Affairs Director of Compensation and Pension Service (DCPS) that statistically significant increased risk for rectal cancer was found only after extremely high radiation occurred, making it unlikely that the appellant's cancer was attributable to in-service radiation exposure. The ACMD letter cited an excerpt from the Mettler treatise. The DCPS, in turn, prepared an opinion letter stating that, based on the ACMD's letter, he found no reasonable possibility that the appellant's rectal cancer could have resulted from in-service ionizing radiation.

■ In November 1996, the Board of Veterans' Appeals (BVA or Board) found the appellant's claim to be well grounded, but denied the claim on the merits. In making its decision, the BVA explained and relied on the DNA report, the DCPS opinion letter, and the ACMD's letter. However, neither the NIOSH report nor the Mettler treatise was mentioned, and there is no evidence that the documents were submitted to or considered by the regional office (RO) or the BVA. Nevertheless, the appellant requests that the Court now consider them on appeal.

■ Under 38 U.S.C. § 7252(b), the Court is "precluded by statute from considering any material which was not contained in the record of proceedings before the Secretary and the Board." Bell v. Derwinski, 2 Vet.App. 611, 612 (1992) (per curiam order); see also Simington v. Brown, 9 Vet.App. 334, 335 (1996); Rogozinski v. Derwinski, 1 Vet. App. 19, 20 (1990). Mere "reference to the existence" of the records during adjudication of the claim does not satisfy the statutory requirement. Rogozinski, 1 Vet.App. at 20. Thus, where there is "no basis, evidentiary or otherwise, to conclude that the documents ... were before the Board when it rendered its decision," the documents cannot serve as part of the ROA. Murillo v. Brown, 8 Vet. App. 278, 279 (1995) (per curiam order).

The reason for this rule is that "[f]or the Court to base its review on documents not included in the Board's calculus at the time it rendered its decision would render the Court a fact finder de novo, exceeding its authority under the statutory scheme." Id. at 280.

■ However, in certain circumstances, records are deemed to be constructively before the Board for purposes of constituting the ROA. In Bell, the Court specifically held that if (1) "items were clearly generated by" the VA or the "item was submitted to the VA by appellant as part of [the] claim", and (2) the documents predate the BVA opinion on appeal to the Court, then as a matter of law the evidence was before the Secretary and the Board for purposes of section 7252(b) and could properly be considered part of the ROA. Bell, 2 Vet.App. at 612–13. The Court then expounded on its specific rule, stating in broader terms that "where the documents proffered by the appellant [in a counter designation of record] are [1] within the Secretary's control and [2] could reasonably be expected to be a part of the record 'before the Secretary and the Board,' such documents are, in contemplation of law, before the Secretary and the Board and should be included in the record." Id.

In this case, the documents at issue satisfy neither the specific rule nor the broader explication expressed in Bell. The NIOSH report and the Mettler treatise do not satisfy

the specific rule in *Bell* because the documents were neither clearly generated by VA nor submitted to VA by the appellant as part of the claim. Nor do the documents satisfy the broader rule because they could not be reasonably expected to be a part of the record before the Secretary or the Board. It is not reasonable to expect the Secretary or the Board to have investigated, gathered, and considered the NIOSH report or the Mettler treatise where those documents were merely referenced in expert opinion letters. *See Rogozinski, supra* (mere reference to documents was insufficient to satisfy § 7252(b)); *compare Nici v. Brown,* 9 Vet.App. 494, 497–98 (1996) (medical treatises appended to appellant's brief were not part of record on appeal and could not be considered by Court); *Simington,* 9 Vet.App. at 335–36 (appellant had to show evidence that appellant had supplied documents to Secretary and that "documents were, at any time, in the Secretary's possession" before rebuttable presumption arose that disputed evidence was "'within the control of the Secretary' and should, therefore, be included in the record on appeal"); *Obert v. Brown,* 5 Vet. App. 30, 32 (1993) (excerpt from medical treatise not before BVA could not be considered by Court on appeal).

The appellant argues that the BVA must possess the two counter-designated documents somewhere in its files because the BVA has decided many cases that have referred to the documents. However, this argument assumes either (1) that for the purpose of the appellant's case, the BVA constructively possesses all evidence generally relied upon by similar claims as long as the material is referenced somewhere in the appellant's file; or (2) that if the BVA possesses reference materials, then any reference to that material makes it part of the record. Neither of these assumptions squares with *Bell*'s requirement that the evidence must "reasonably be expected to be a part of the record 'before the Secretary and the Board,'" *Bell, supra,* because the connection to the appellant's case is too tenuous.

The logical (or illogical) extension of the appellant's argument would be to place matters "in the record" by mere allusion to them

without regard to whether they were, in fact, before the Board or were considered by the Board in reaching its decision. This would be, possibly, the thin end of a wedge with unforeseeable consequences that would ill serve the orderly review of the decision below and the actual record upon which that decision was based. Therefore, it is

ORDERED that the Secretary's motion to limit the record by excluding the counter-designated documents from inclusion in the record on appeal is granted. It is further

ORDERED that the Secretary's motion to stay proceedings pending disposition of the motion is denied as moot. It is further

ORDERED that the case is returned to the screening judge for further proceedings. It is further

ORDERED that the Secretary shall transmit the record on appeal within 30 days after the entry of this order.

STEINBERG, Judge, concurring in part and dissenting in part:

The Court's order is a cogent explication of the Court's existing precedent and a fair application of that precedent to the Mettler treatise excerpt cited (according to the representations of the parties) in the February 1996 letter from the VA Assistant Chief Medical Director for Public Health and Environmental Hazards. I agree with the Court that the treatise "could not be reasonably expected to be a part of the record before the Secretary or the Board [of Veterans' Appeals (BVA or Board)]", *ante* at 109 within the meaning of *Bell v. Derwinski,* 2 Vet.App. 611, 613 (1992) (per curiam order), because it would be unreasonable to expect every treatise cited in an expert-opinion statement that is relied upon by the Board to be a part of the proceedings before the Secretary or the Board. However, as to the NIOSH report prepared for the DNA, I believe that that document is encompassed by this Court's interpretation of 38 U.S.C. § 7252(b) in *Bell* and subsequent caselaw relying upon *Bell.* This case presents an appropriate opportunity for our caselaw to clarify that documents that "could reasonably be expected to be a part of the record 'before the Secretary and

the Board' ", *Bell, supra,* includes more than documents generated directly by VA or proffered to it by the appellant prior to the decision on appeal. On the basis of the ensuing analysis, I would include the NIOSH report in the record on appeal (ROA).

In *Bell,* the Court indicated that in considering "whether items counter designated by [the] appellant were 'before the Secretary and the Board' ... '[t]he Court cannot accept the Board being 'unaware' of certain evidence, especially when such evidence is in possession of ... VA, and the Board is on notice as to its possible existence or relevance.'" *Id.* at 612 (quoting *Murincsak v. Derwinski,* 2 Vet.App. 363, 372–73 (1992), and citing *Rollins v. Derwinski,* 2 Vet.App. 481, 482–83 (1992)). *Bell* was thus concerned with evidence "in [VA's] possession" and of which the Board was aware. Subsequent readings of *Bell* have most often applied its rule to VA-generated documents directly related to the appellant and held that those documents were constructively before the Secretary or the Board.[1] However, the Court has also applied the *Bell* rule to documents that were not generated by VA but were submitted to it by the appellant.[2] The *Bell* principle was broadly articulated in *Henderson v. Brown,* where the Court stated:

> When "relevant" documents relating to the appellant's claim were within the Secretary's control (for example, records generated by VA or communications received by it) prior to the BVA decision on appeal, and could reasonably have been expected to be part of the record, such documents are "in contemplation of law" constructively part of the record of those proceedings and should be included in the record.

*Henderson,* 10 Vet.App. 272, 276 (1997) (per curiam order). In keeping with this language, I believe that *any* document that satisfies these two criteria—one that is (1) within the Secretary's control and (2) could reasonably have been expected to be part of the record—satisfies *Bell.*

The NIOSH report proffered by the appellant here shows that it was distributed to many addressees by the DNA in April 1981, including to four VA Medical Centers and what appears to be four VA Central Office officials, including the Chief Benefits Director and an attorney employed by the BVA.[3] Additionally, based on experience in reviewing other cases involving radiation ex-

---

1. *See Blount v. West,* 11 Vet.App. 34 (1998) (per curiam order) (including in record on appeal (ROA) reverse side of Department of Veterans Affairs (VA) document already in ROA); *Blount v. West,* 11 Vet.App. 32 (1998) (per curiam order) (including in ROA two VA-generated documents from appellant's VA claims file); *Lynch v. Gober,* 11 Vet.App. 22, 26 (1997) (clarifying that the *Bell* doctrine is prospective only, but noting that *Bell* "stands for the principle that, at least for the purpose of determining whether [an ROA] is complete and a case is ripe for judicial review, VA has constructive notice of VA-generated documents that could 'reasonably' be expected to be part of the record and that such documents are thus *constructively* part of the record before the Secretary and the Board [of Veterans' Appeals (Board or BVA)] even where they were not *actually* before the adjudicating body"); *Damrel v. Brown,* 6 Vet.App. 242, 246 (1994) (assuming Secretary would have constructive knowledge of VA insurance determination but finding constructive knowledge irrelevant because *Bell* did not operate retroactively); *Hulsey v. Principi,* 3 Vet.App. 486, 487 (1992) (per curiam order) (including in ROA x-rays made of appellant in VA facility). *But see Gabrielson v. Brown,* 7 Vet.App. 36, 41–42 (1994) (Court denied as moot Secre-

tary's motion to strike materials appended to appellant's brief, which materials Court did not identify); *Caffrey v. Brown,* 6 Vet.App. 377, 384 (1994) (Kramer, J., concurring) ("case law of the Court clearly indicates that constructive receipt applies *only* to VA records").

2. *See Simington v. Brown,* 9 Vet.App. 334, 335–36 (1996) (per curiam order) (if appellant could corroborate assertion that he had proffered Army documents to VA so as to show that "the documents were, at any time, in the Secretary's possession, a rebuttable presumption would arise that the disputed evidence was 'within the control of the Secretary' and should, therefore, be included in the [ROA]"); *Cross v. Brown,* 9 Vet. App. 18, 19–20 (1996) (per curiam order) (notification of change of address sent to RO, instead of to Board, constructively before Board where Board had ordered RO to ascertain veteran's address).

3. In order to assist the Court in deciding this counter-designation question, I would issue an order directing the Secretary to address the extent to which this report was in this case within the Secretary's and/or the Board's control.

posure,[4] I would take judicial notice of the fact that in every case involving a radiogenic disease listed in 38 C.F.R. § 3.311(b)(2) (1997) in a veteran considered a radiation-exposed veteran by virtue of presence in Hiroshima or Nagasaki, the DNA provides an exposure estimate to VA, pursuant to section 7 of Public Law No. 98–542, 98 Stat. 2725, 2730–31 (1984), and 38 C.F.R. § 3.311(a)(2)(ii) (1997), of less than one rem and does so based on the NIOSH report. The effect of this estimate is, in essence, to preclude the claimant's prevailing on a claim involving service connection—unless he can obtain an independent dose estimate [5]—because there is apparently no scientific evidence to connect such low-dose estimates to the development of radiogenic diseases.[6]

Hence, in a situation such as this, I find it reasonable to expect the NIOSH report to be a part of the administrative record in each such case involving a DNA dose estimate based on presence at Hiroshima or Nagasaki and believe that this report is virtually sui generis in terms of such reasonable expectation. In accordance with *Bell, supra*, the NIOSH report is evidence that appears clearly to have been within the control of the Secretary and/or the Board,[7] and the Board was necessarily on notice not only of its relevance but of its determinative significance.[8] I would thus hold that the report was before the Secretary and the Board in this case.

On the basis of the foregoing analysis, I concur with the Court's holding that the counter-designated treatise not be included in the ROA but respectfully dissent as to the Court's exclusion from the ROA of the counter-designated NIOSH report.

---

4. *See, e.g., Ramey v. Brown*, 9 Vet.App. 40, 43 (1996), *aff'd sub nom. Ramey v. Gober*, 120 F.3d 1239 (Fed.Cir.1997); *Douglas v. Derwinski*, 2 Vet.App. 103, 106 (1992) (as to "scientific dose reconstruction" referenced in DNA dose estimate), *reaff'd on other grounds, Douglas v. Derwinski*, 2 Vet.App. 435, 440–41 (1992) (en banc); *Papa v. Brown*, 5 Vet.App. 327, 330 (1993) (mem. dec.) (as to "DNA scientific study"); *see also Davis v. Brown*, 10 Vet.App. 209, 210 (1997); *Earle v. Brown*, 6 Vet.App. 558, 559–60 (1994).

5. *See* 38 C.F.R. § 3.311(a)(3) (1997) ("When necessary to reconcile a material difference between an estimate of dose, from a credible source, submitted by or on behalf of a claimant, and dose data derived from official military records, the estimates and supporting documentation shall be referred to an independent expert"); *see also Papa*, 5 Vet.App. at 332 (mem. dec.) (appellant challenging reliance on Defense Nuclear Agency report required to raise that issue first to BVA).

6. *See, e.g., Davis*, 10 Vet.App. at 211; *Ramey, supra* note 4; *Harrison v. Principi*, 3 Vet.App. 532, 533–34 (1992). *But cf. Sawyer v. Derwinski*, 1 Vet.App. 130, 138 (1991) (Steinberg, J., concurring) (referring to National Academy of Sciences report, entitled *Health Effects of Exposure to Low Levels of Ionizing Radiation*, referred to by appellant in oral argument in case with dose estimate of 4.4 rem).

