# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-5411

STANLEY L. DAVIS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 24, 2022                                     Decided May 31, 2023)

*Kenneth H. Dojaquez*, of Topeka, Kansas, for the appellant.

*Alexander You*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Drew A. Silow*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and FALVEY and LAURER, *Judges*.

BARTLEY, *Chief Judge*, filed the opinion of the Court. FALVEY, *Judge*, filed a concurring opinion.

BARTLEY, *Chief Judge*: Veteran Stanley L. Davis appeals through counsel a July 8, 2020, Board of Veterans' Appeals (Board) decision that found untimely a December 2018 Notice of Disagreement (NOD) filed with respect to a May 2016 VA regional office (RO) decision. Record (R.) at 5-10. His appeal of that issue to this Court is timely, and we have jurisdiction to review the Board decision. *See* 38 U.S.C. §§ 7252(a) and 7266(a).

This appeal concerns whether the Board erred in not considering evidence submitted by the veteran that related to VA's mailing of his May 2016 decision. Under VA's modernized appeal process, also called the Veterans Appeals Improvement and Modernization Act (AMA), a claimant who appeals an adverse decision by the agency of original jurisdiction to the Board and wants to submit additional evidence must do so within 90 days after the Board's "receipt" of the claimant's VA Form 10182, the AMA NOD. 38 U.S.C. § 7113(c)(2)(B). This matter was referred to a panel of this Court, with oral argument,[1] to address the veteran's arguments regarding the meaning of

---

[1] *Davis v. McDonough*, No. 20-5411, Oral Argument [hereinafter Oral Argument]. Available at https://www.youtube.com/watch?v=sXrISSYHubc.

"receipt" as used in section 7113(c)(2)(B). We conclude that the Board neither clearly erred in determining that it received Mr. Davis's VA Form 10182 on August 14, 2019, nor clearly erred in refusing to consider evidence submitted after the section 7113(c)(2)(B) 90-day period ended on November 12, 2019. In addition, the Court determines that the evidence submitted outside the 90-day window was not constructively before the Board. Thus, and because Mr. Davis does not assert error based on the evidence the Board considered, the Court will affirm the July 2020 Board decision.

## I. FACTUAL BACKGROUND

Mr. Davis served honorably in the U.S. Navy from August 1985 to June 1988. R. at 2498.

In May 2004, the RO denied service connection for lupus. *See* R. at 422-23. Mr. Davis did not appeal that decision. However, following a request to reopen the claim, the RO, in June 2010, granted service connection for systemic lupus erythematosus with glomerulonephrosis (a kidney condition), alopecia (hair loss), and depression, effective February 27, 2009. *See* R. at 417. Mr. Davis appealed the June 2010 RO decision to the Board, challenging the effective date assigned for service connection. *See id.*[2]

In October 2013, Mr. Davis argued, among other things, that the May 2004 RO decision contained clear and unmistakable error (CUE) in failing to properly apply 38 C.F.R. § 3.303(a) and (d) as to evidence that he experienced lupus symptoms during active duty. R. at 422-23. In February 2014, the Board remanded the earlier-effective-date claim, instructing the RO to adjudicate the CUE motion. R. at 416-18. In May 2016, the RO denied the CUE motion. R. at 378-80; *see* R. at 362-64 (notification letter).

In August 2016, the veteran's counsel requested a copy of the veteran's claims file under the Privacy Act, 5 U.S.C. § 552a. R. at 354-55. In March and November 2017, Mr. Davis, through counsel, argued, as relevant here, that the RO had ignored the February 2014 Board remand order to adjudicate the pending CUE motion. R. at 332-35 (March 2017), 282-83 (November 2017). In April 2018, VA fulfilled the Privacy Act request. R. at 276.

---

[2] In an earlier appeal to this Court, Mr. Davis argued, for reasons not relevant here, that the May 2004 RO decision was not final, an argument the Court rejected. *Davis v. McDonough*, 34 Vet.App. 131, 132 (2021), *appeal dismissed*, 2023 WL 1987940 (Fed. Cir. Feb. 14, 2023). Nevertheless, the Court remanded the appeal for the Board to determine whether reconsideration of Mr. Davis's original claim was warranted under 38 C.F.R. § 3.156(c). *Davis*, 34 Vet.App. at 139-40.

2

In December 2018, Mr. Davis, through counsel, attempted to file an NOD as to the May 2016 RO denial of the CUE motion, stating, in part, that counsel did not receive notice of the RO decision until VA fulfilled the Privacy Act request. R. at 209-10. Counsel further stated that, although counsel sent numerous correspondences to VA requesting action on the pending CUE motion, he received no response. R. at 210.

In January 2019, the RO informed Mr. Davis that the December 2018 NOD was not timely filed. R. at 186-89. Later that month, Mr. Davis filed an NOD as to the RO's January 2019 timeliness determination. R. at 181-82. In June 2019, the RO issued a Statement of the Case (SOC) and informed Mr. Davis that he could opt into the AMA. R. at 132-35. Of note, the AMA opt-in notice stated that, if Mr. Davis wished to file a VA Form 10182, he could send that form to the Board. R. at 135 (providing the Board's postal address and fax number (844-678-8979)).

On August 14, 2019, Mr. Davis faxed a VA Form 10182 to the Board, indicating that he was opting-in to VA's modernized review system and seeking to continue his appeal to the Board. R. at 88; *see* R. at 132-35 (June 2019 SOC explaining the AMA opt-in process). Mr. Davis chose the additional evidence docket, which, as VA Form 10182 provided, meant that Mr. Davis had "additional evidence in support of [the] appeal that [he] will provide within the next 90 days." *Id*. The VA Form 10182 header indicates that counsel faxed the form to the Board's fax number. *Id*. (listing an outgoing fax number of (844) 678-8979 and stating "VA Claims Intake Center – Date (08142019) – Source BVA Fax"); *see* R. at 132-35; *Board of Veterans' Appeals, Customer Service*, available at https://www.bva.va.gov/CustomerService.asp (listing the Board's fax number as 1-844-678-8979) (last accessed February 13, 2023).

On September 9, 2019, written Board correspondence informed Mr. Davis that the Board had received his VA Form 10182 and that he had "90 days from the date of the Board's receipt of [his] Board Appeal (VA Form 10182) to submit new evidence." R. at 86-87. On September 12, 2019, Mr. Davis, through counsel, acknowledged receipt of the Board letter and requested "that the Board postpone making any decision for the full 90 days from the date the Board received" the VA Form 10182. R. at 83 (emphasis removed). Counsel asserted that the day the Board received his VA Form 10182 NOD was September 9, 2019, and indicated that 90 days would expire on December 6, 2019. *Id*. On December 5, 2019, Mr. Davis, through counsel, submitted a brief to the Board along with evidence in support of his appeal as to the timeliness of the December 2018 NOD. R. at 17-56.

In the July 2020 decision on appeal, the Board found that the 90-day window to submit evidence began upon receipt of Mr. Davis's VA Form 10182 NOD on August 14, 2019—not when the Board mailed its September 9, 2019, acknowledgement that it had received his VA Form 10182 NOD. R. at 7. Because the Board found that Mr. Davis's December 5, 2019, evidence submission fell outside the 90-day window (which, according to the Board, ended on November 12, 2019), it concluded that it was unable to consider that evidence. R. at 7-8. The Board concluded that Mr. Davis's December 2018 NOD was not timely filed as to the May 2016 RO decision denying the CUE motion. R. at 8-10. This appeal followed.

## II. ARGUMENTS

Mr. Davis argues that the Board made an error of law when it concluded that it received his VA Form 10182 on August 14, 2019, and, by extension, that the Board erred in determining that the 90-day window to submit evidence ended on November 12, 2019. Appellant's Brief (Br.) at 5-12. He asserts that the plain meaning of "receipt" in section 7113(c) is "taking physical possession" of a document and that "receipt" in section 7113 must differ from "filing" in 38 U.S.C. § 7105(a). *Id.* at 8; Oral Argument at 7:58-9:34. To that end, Mr. Davis asserts that, although he faxed his VA Form 10182 NOD on August 14, 2019, the Board did not "receive" or "take physical possession" of the NOD until VA's Evidence Intake Center (EIC) uploaded the document to his electronic claims file and the Board acknowledged receipt on September 9, 2019. Appellant's Br. at 10-12; Oral Argument at 29:00-32:55. In the alternative, he argues that the evidence submitted in December 2019 was constructively before the Board. Appellant's Br. at 21-24; Oral Argument at 1:04:47-1:08:22.[3]

The Secretary argues that the Board plausibly determined that it received Mr. Davis's VA Form 10182 NOD on August 14, 2019, the date Mr. Davis's counsel faxed the form to the Board. Secretary's Br. at 16-19. He argues that the evidence submitted on December 5, 2019, more than 90 days after August 14, 2019, was untimely and that the Board correctly refused to consider it. *Id.*; Oral Argument at 38:44-39:43. Additionally, he argues that the Board did not otherwise have constructive possession of the late-submitted evidence because it was either not relevant or could

---

[3] Mr. Davis makes no additional assertions of Board error. Oral Argument at 35:04-36:24. Thus, the Court deems other arguments abandoned. *See Grivois v. Brown*, 6 Vet.App. 136, 138 (1999) (explaining that the Court has discretion to deem unargued issues abandoned).

4

not reasonably have been expected to be part of Mr. Davis's administrative record. Secretary's Br. at 10-15; Oral Argument at 52:50-59:31.

### III. ANALYSIS

#### A. Legal Landscape

Under the AMA, "appellate review shall be initiated by the filing of a notice of disagreement in the form prescribed by the Secretary," specifically, VA Form 10182. 38 U.S.C. § 7105(a). "Notices of disagreement shall be filed with the Board." 38 U.S.C. § 7105(b)(2)(C).

When appealing to the Board, claimants must choose one of three Board dockets: "hearing," "additional evidence," or "direct review." 38 U.S.C. § 7105(b)(3)(A)-(C); *see Aviles-Rivera v. McDonough*, 35 Vet.App. 268, 273 (2022). Each Board docket has different restrictions on the evidentiary record that will be before the Board and the period during which claimants may submit additional evidence. 38 U.S.C. § 7113(a)-(c). As to the additional evidence docket, the evidentiary submission window closes "90 days following receipt of the" VA Form 10182 NOD. 38 U.S.C. § 7113(c)(2)(B).

The section 7113(c) implementing regulation is 38 C.F.R. § 20.303. *See VA Claims and Appeals Modernization*, 84 Fed. Reg. 138, 155-57 (Jan. 18, 2019) (final rule). The regulation largely parrots the statute, stating in pertinent part that, for cases on the additional evidence docket, the evidentiary record includes evidence submitted by the claimant or representative with the NOD or within 90 days following receipt of the VA Form 10182 NOD. 38 C.F.R. § 20.303(b)(1) (2022).

Board determinations regarding the date of receipt of a VA Form 10182 NOD are findings of fact that the Court reviews under the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4). *Accord Marsh v. Nicholson*, 19 Vet.App. 381, 384 (2005). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

#### B. Receipt of Mr. Davis's VA Form 10182 NOD

The Board found that Mr. Davis's AMA NOD was received on August 14, 2019, the date the veteran's counsel faxed it to the Board's fax number. R. at 7 ("It is clear from the NOD itself that it was transmitted via facsimile from the office of the [v]eteran's attorney on August 14,

2019[,] and received on the same day."). Mr. Davis does not dispute that he faxed the AMA NOD to the number identified as the Board's fax number on August 14, 2019, but he argues that the NOD was not received by the Board on that date. The veteran's arguments are unpersuasive.

Relying on *Black's Law Dictionary* definitions, Mr. Davis notes that, as applied to NODs, "file" refers to the delivering of the NOD whereas "receipt" means the act of taking possession over the NOD. Appellant's Br. at 7-8; *see File*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To deliver a legal document to the court clerk or record custodian for placement into the official record."); *Receive*, BLACK'S LAW DICTIONARY ("To take (something offered, given, sent, etc.); to come into possession of or get from some outside source."). Using these definitions, he argues that the two words are not synonymous and that Congress acted intentionally in section 7113(c) when it used the Board's "receipt" as the event triggering the 90-day evidence submission window. Appellant's Br. at 8-10. To that end, he argues that the Board received his VA Form 10182 NOD on September 9, 2019, the date the EIC uploaded the form to his claims file and the Board acknowledged receipt of the NOD, as opposed to August 14, 2019, the date he faxed it. *Id*. at 10-12.[4]

But even accepting the argument that "file" and "receipt" refer to discreet actions, Mr. Davis fails to demonstrate why such a distinction is significant in his case. In other words, although he argues that the dates of filing and receipt are not necessarily the same, he fails to explain how the two dates are different in his case. Mr. Davis advances arguments regarding the plain language and congressional intent of section 7113(c), specifically comparing and contrasting that language to that found in the Board's and the Court's statutory mailbox rules, 38 U.S.C. § 7105(b)(1)(B) and 38 U.S.C. § 7266(c) respectively. Appellant's Br. at 8-9. But he fails to explain why any purported distinction in those statutes—statutes relevant only to mailed documents—is significant in his case because he faxed his form to the Board and did not mail it. *See* R. at 88 (showing the outgoing fax number). Mr. Davis acknowledges that he was required to file VA Form 10182 NOD with the Board, Oral Argument at 25:55-26:03, that he faxed the form to the Board using the appropriate fax number, *id*. at 12:40-12:45, and that the Board would accept a timely faxed form as properly filed, *id*. at 27:08-27:44.

---

[4] More specifically, Mr. Davis argues that the Board received the NOD at some undefined point *after* August 14, 2019, and because the only evidence that confirms actual receipt is dated September 9, 2019, that date begins the 90-day period. *Id*. at 10-12; *see* R. at 83.

The veteran's acknowledgements in this regard are consistent with the Board's finding that it was clear from the received copy of the NOD itself that it was faxed from the office of the veteran's attorney on August 14, 2019, and received on the same day. R. at 7. It is commonly understood that when a document is successfully transmitted between two fax machines, the document is sent and immediately received. *See Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 478 (7th Cir. 2009) (noting that a successful fax confirmation means that "the two fax machines have performed an electronic 'handshake' and that the data has been transmitted from one machine to the other"); *see also id.* (quoting INFORMATION SECURITY MANAGEMENT HANDBOOK 227 (Harold F. Tipton & Micki Krause eds., 6th ed. 2008), for the proposition that one advantage of fax transmission "is that the sender immediately knows if the transmission was successful").[5]

Mr. Davis attempts to circumvent the Board's factual conclusion by arguing that, although he faxed the AMA NOD on August 14, 2019, the form was first routed to the EIC for uploading to the veteran's electronic claims file. He argues that the Board did not take possession over the NOD until uploading was complete. Under this process, Mr. Davis argues the Board was not made aware of his VA Form 10182 NOD until the EIC uploaded it.

Mr. Davis's arguments in this regard are underdeveloped. The Board uses the EIC to collect filed documents, including VA Form 10182 NODs, and to upload those documents to individual claims files. Mr. Davis argues that the EIC is not part of VA but is instead a facility contracted by VA, Reply Br. at 3 n.1, but he fails to explain why such a distinction is material or why the Board's delegation of ministerial acts is significant. And although he argues that documents faxed to the Board's fax number are directly routed to the EIC, *id.* at 3; Oral Argument at 14:33-15:13, he fails to reconcile that argument with his assertion that he properly filed his AMA NOD with the Board under section 7105(b)(2)(C). Finally, although he argues that the Board was not aware of his NOD until it was uploaded by the EIC, he fails to explain how the Board's awareness of the NOD is

_____

[5] We acknowledge that the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has not yet followed its sister courts in adopting a presumption that a sender's fax confirmation sheet produces a rebuttable presumption of receipt, stating in part, that "[p]roof of message exit from a transmitting machine cannot serve as a proxy for proof of actual receipt of the sent message by a remote receiving terminal." *Riley & Ephraim Const. Co., Inc. v. United States*, 408 F.3d 1369, 1372 (Fed. Cir. 2005). However, that case involved a contract dispute where objective indicia of receipt were required and the sender had failed to produce a fax confirmation sheet, so the Federal Circuit expressly declined to address application of a presumption of receipt. *Id.* Moreover, the Board here did not infer the date of receipt from Mr. Davis's fax confirmation sheet, but instead relied on the received copy of the faxed AMA NOD with the date of transmission clearly marked in the header. *See* R. at 88.

7

relevant to the date of its receipt, particularly as receipt of Mr. Davis's NOD required no action by the Board; in fact, it required the Board to wait at least 90 days to decide his appeal.[6] Without further explanation from Mr. Davis regarding any purported distinction between the Board and the EIC for purposes of receiving his AMA NOD, the Court cannot agree that Mr. Davis has demonstrated error in the Board's finding that the NOD was received on August 14, 2019. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain underdeveloped arguments).

Accordingly, it follows that Mr. Davis fails to demonstrate clear error in the Board's finding that the 90-day period to submit additional evidence closed on November 12, 2019, and its ultimate finding that the evidence submitted by Mr. Davis on December 5, 2019, was not timely submitted.

### C. Constructive Possession

Mr. Davis alternatively argues that three documents pertinent to the timeliness issue on appeal were constructively before the Board when it made its decision, Appellant's Br. at 22[7]: (1) a 2017 Government Accountability Office (GAO) report entitled *Veterans Affairs: Actions Needed to More Effectively Manage Outgoing Mail* (GAO-17-581), documenting the lack of VA management of outgoing mail, *see* R. at 33-55; (2) two June 2019 letters from Mr. Davis's counsel to VA, complaining that he did not receive certain VA correspondence related to other cases, *see* R. at 21-24; and (3) the "Chisholm" and "Rauber" affidavits cited by this Court in *Romero v. Tran*, 33 Vet.App. 252 (2021), and submitted to VA by Ms. Romero in conjunction with her own claim.[8] Mr. Davis argues that even if this evidence, attached to his December 2019 Board brief, was not timely received by the Board, it nevertheless had constructive possession of the evidence and should have considered it. Appellant's Br. at 21-24; Reply Br. at 5-9.

---

[6] We note that in its final rule implementing § 20.303, the corresponding regulation for section 7113(c), VA specifically rejected a commenter's suggestion that the 90-day evidentiary submission window should begin when the Board acts to notify a claimant that an NOD was received. 84 Fed. Reg. at 155.

[7] Mr. Davis initially argued that an April 2019 letter sent by counsel to the Board and captioned with another claimant's name and claims file number was constructively before the Board. Appellant's Br. at 22-25 (citing R. at 20). He later withdrew that argument. Reply Br. at 6 n.2.

[8] The Chisholm and Rauber affidavits are not in the record before the Court in this appeal. As discussed by the *Romero* Court, Ms. Romero submitted, within the context of her agency appeal, affidavits from Robert Chisholm and Diane Rauber attesting to instances of VA "mailing failures," with Mr. Chisholm describing at least 863 instances to his law firm and Ms. Rauber describing 272 instances to the National Organization of Veterans' Advocates, Inc. *Romero*, 33 Vet.App. at 256-57.

A claimant must satisfy several requirements to show constructive possession. First, the evidence at issue must pre-date the Board decision. *Euzebio v. McDonough*, 989 F.3d 1305, 1319 (Fed. Cir. 2021) (citing *Bell v. Derwinski*, 2 Vet.App. 611, 612-13 (1992)). Next, the evidence must be within the Secretary's control, meaning the Secretary has actual or constructive knowledge of the evidence. *Id*. at 1318-19 (citing *Lang v. Wilkie*, 971 F.3d 1348, 1354 (Fed. Cir. 2020); *Bell*, 2 Vet.App. at 613), 1321. Finally, the evidence must be relevant and reasonably connected to the veteran's claim. *Id*. at 1321 ("The correct standard . . . is relevance and reasonableness.").

The Federal Circuit rejected the proposition that evidence must bear a direct relationship to the specific veteran for VA to have constructive possession of it in an individual's case, *id*. at 1324, and clarified that relevance is measured by whether the document tends to prove or disprove a material fact, *id*. (citing *AZ v. Shinseki*, 731 F.3d 1303, 1311 (Fed. Cir. 2013)). In rejecting the direct relationship test, the Federal Circuit referenced this Court's decision in *Goodwin v. West*, 11 Vet.App. 494, 495-96 (1998) (per curiam), which held that documents generated by VA with respect to other claimants, but not submitted in relation to Mr. Goodwin's claim, could not reasonably be expected to be part of Mr. Goodwin's record. *Euzebio*, 989 F.3d at 1320. The Federal Circuit also favorably cited this Court's decision in *Bowey*, which framed the requirement that evidence be "reasonably expected to be a part of the record" as "whether it was 'reasonable to expect [VA] to have investigated, gathered, and considered'" that evidence. *Id*. at 1326 (quoting *Bowey v. West*, 11 Vet.App. 106, 109 (1998)). Both *Euzebio* and *Bowey* favored rejecting constructive possession of evidence that was "'too tenuous'" to be relevant. *Id.*

The Court assesses constructive possession as part of its role to ensure that the Board bases its decision on the evidence properly within the administrative record and, thus, that its decision is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id*. at 1321-23; *see* 38 U.S.C. § 7261(a)(3)(A).

### 1. GAO Report 17-581

The primary impetus for GAO-17-581 was to examine the efficiency and cost-effectiveness of VA's mailing practices. As of 2016, VA mailings were among the most numerous and the costliest in the federal government. R. at 34. The report addressed all VA mailing practices and concluded that VA utilized a fragmented process with each section of VA and each local facility responsible for its own mail management. R. at 39, 42-46. The report concluded that VA did not maintain agency-wide mail operations performance measures, did not manage outgoing mail

effectively, did not track reliable data on volume and expenditures, and did not have managers in place with appropriate authority and responsibilities. R. at 34, 46-48.

Mr. Davis contends that GAO-17-581 was constructively before the Board and is relevant because it "supports [his] argument that VA's mail practices were not regular" and demonstrates VA "failed to effectively perform" its mailing. Appellant's Br. at 23 (internal quotation omitted). But he mischaracterizes the GAO report's intent and findings. The report did not address the accuracy or reliability of VA's mailing practices; to the contrary, it noted that VA was unable to evaluate the consistency or accuracy of its mailing process because its management did not track performance measures. R. at 42, 47.

But even assuming the relevance of GAO-17-581, Mr. Davis fails to explain why it would reasonably be expected to have been constructively before the Board in his case. In *Bowey*, this Court framed the reasonableness question as whether it would be reasonable to expect the Secretary or the Board to have investigated, gathered, and considered the evidence at issue. 11 Vet.App. at 109; *see Euzebio*, 989 F.3d at 1326 (endorsing *Bowey*'s framing). There, the Court held that a mere reference in an expert opinion letter to non-VA generated evidence was insufficient to consider that evidence constructively before the Board, because the connection to the veteran's case was too tenuous. *Bowey*, 11 Vet.App. at 109. Here, it is even less reasonable for the non-VA generated document at issue, the GAO report, to be considered constructively before the Board in Mr. Davis's case. Prior to Mr. Davis's December 2019 out-of-time submission, and when he was represented by current counsel, he did not mention the GAO report and it was not mentioned in documents of record before the Board. In addition, neither he nor his counsel asserted irregularity in VA's mailing process. Instead, in his December 2018 purported NOD and his January 2019 NOD he simply asserted that he had not received the May 2016 RO decision and that VA had not responded to his counsel's queries. R. at 181-82, 209-10. Without mention or reference by Mr. Davis or his counsel as to VA mailing irregularity, and particularly considering that the thrust of the report was VA's agency-wide cost and management inefficiencies as to mailings, it is not reasonable for the Board in July 2020 to have considered that report in adjudicating Mr. Davis's claim. Thus, GAO-17-581 had too tenuous of a connection to the timeliness issue in Mr. Davis's claim for it to have been in the Board's constructive possession. *See Bowey*, 11 Vet.App. at 109.

## 2. *June 2019 Letters*

Mr. Davis argues that letters his counsel sent to the VBA Director of Compensation Service and the Board "Director" detail 47 instances between December 2015 and May 2019 where his law firm did not receive VA correspondences. R. at 21-22 (detailing 39 instances), 23-24 (detailing 8 instances). He argues that both letters are relevant because they document irregularity in VA mailings to his counsel.

Mr. Davis fails to persuasively demonstrate that either letter could reasonably be expected to be part of his administrative record. He argues both that the letters were not meant to be associated with individual claims files, Appellant's Br. at 23; Reply Br. at 7-9, and that the letters reasonably could be expected to be associated with *his* individual claims file. Aside from the fact that these arguments are contradictory, it is unclear to the Court why counsel's letters sent to VA administrators, which were not sent to VA adjudicators or intended to be associated with individual claimants' files, would be expected to be associated with Mr. Davis's file.

Moreover, Mr. Davis fails to persuade the Court that it would be reasonable for the Board to have investigated, gathered, and considered the June 2019 letters in conjunction with his appeal. *See Bowey*, 11 Vet.App. at 109. Prior to Mr. Davis's December 2019 submission, there was nothing in the record mentioning or alluding to VA irregular mailings in general or to VA irregular mailings to his counsel. Instead, Mr. Davis's December 2018 purported NOD and his January 2019 NOD only assert that he did not receive the May 2016 RO decision and that VA did not respond to counsel's inquiry letters. R. at 181-82, 209-10. With no suggestion of a pattern of VA mailing irregularity with regard to his counsel, and with no suggestion of a more general problem with VA mailings, it would not have been reasonable for the Board to have gathered and associated with his file evidence of a VA mailing irregularity as to his counsel.[9] Thus, the Court concludes that the June 2019 letters are not reasonably related to Mr. Davis's claim and were not constructively before the Board.

---

[9] Although not a factor typically considered for constructive possession, the Court notes that Mr. Davis's counsel, who drafted the June 2019 letters, did not timely submit his letters to be considered in support of Mr. Davis's appeal. *See, e.g., United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[A]s a general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003)) (Scalia, J., concurring in part and concurring in the judgment) (second alteration in original)).

### 3. Chisholm and Rauber Affidavits

The veteran's argument that the Chisholm and Rauber affidavits could be reasonably expected to be associated with his file is largely based on the *Romero* Court's discussion of these same affidavits. Appellant's Br. at 24. *Romero* involved a late-filed VA Form 9 and the Court in that case addressed whether evidence the veteran timely submitted to the Board, including the Chisholm and Rauber affidavits and the GAO report, demonstrated irregular VA mailing practices sufficient to rebut the presumption of regularity. 33 Vet.App. at 254-56. The *Romero* Court made no determination of the import of this evidence. *Id.* at 265 n.110. In any event, we stress that Mr. Davis's case presents a different question: whether the Board should have considered the Chisholm and Rauber affidavits (and the GAO report) as relevant and reasonably connected to Mr. Davis's case such that it constructively possessed them and was obligated to have considered them in its adjudication even though Mr. Davis did not mention or submit this material himself.

We first note that *Romero* issued in January 2021, 6 months after the Board denied Mr. Davis's appeal.[10] Thus, Mr. Davis's assertion of constructive possession cannot be based on *Romero*'s discussion of the affidavits.

Second, Mr. Davis is incorrect that his December 2019 brief to the Board pointed to the Chisholm and Rauber affidavits. Appellant's Br. at 22. The affidavits were neither referenced in nor appended to his December 2019 Board brief, *see* R. at 30 (listing attachments), and his Board brief never mentioned VA mailing practices regarding other law firms. Thus, the Court concludes that Mr. Davis's brief to the Board did not point to these affidavits, and the veteran's assertion of constructive possession of the affidavits as reasonably connected to his case via his December 2019 Board brief must fail.

Mr. Davis next asserts that the affidavits could be reasonably expected to be associated with his file because they were known by "VA at large" when Ms. Romero appealed her Board decision to this Court in June 2019. Reply Br. at 7; *see* Appellant's Br. at 23. However, he provides no support that VA at large was aware of these affidavits or their content, as opposed to a discrete group of VA officials to whom the affidavits were sent and those employees who were involved in Ms. Romero's Board and Court appeals.

---

[10] The Board denied Mr. Davis's appeal in July 2020, and *Romero* was issued in November 2020 and withdrawn and reissued in January 2021. *Romero*, 33 Vet.App. at 254-55. Moreover, despite Mr. Davis's assertion to the contrary, the *Romero* Court clearly stated that it made no conclusion whether the evidence in that appeal was sufficient to demonstrate widespread VA mailing problems. *Id.* at 265 n.110.

Moreover, contrary to his arguments, these affidavits, and similarly GAO-17-581, are not of the same ilk as the National Academy of Sciences (NAS) reports. As the Federal Circuit explained in *Euzebio*: "The importance and relevance of the NAS Reports to Agent Orange claims are well-known and well-established. . . . [They] exist, by congressional mandate, to give the VA necessary 'independent scientific review of the available scientific evidence regarding associations between diseases and exposure to dioxin and other chemical compounds in herbicides.'" 989 F.3d at 1320 (quoting Agent Orange Act of 1991, Pub. L. No. 102-4, 105 Stat. 11 (1991)); *see Aviles-Rivera*, 35 Vet.App. at 272-73 (discussing history of NAS Reports). Because the NAS reports were mandated by the Agent Orange Act, which was codified in part at 38 U.S.C. § 1116, *Euzebio*, 989 F.3d at 1320, there is no dispute that Board adjudicators are aware of them, *id*. at 1325. Neither the affidavits nor GAO-17-581 have the same profile or relevance to adjudication as the NAS Reports. Thus, the Court cannot accept Mr. Davis's argument in this regard.

Therefore, the Court must conclude that the Chisholm and Rauber affidavits could not reasonably be expected to have been associated with Mr. Davis's record, and the requirements for constructive possession are not met. *See Bowey*, 11 Vet.App. at 109.

### *4. Mr. Davis's December 2019 Brief to the Board*

Mr. Davis argues that, regardless of the evidentiary record restriction, the Board was not precluded from considering his December 2019 brief to the Board that included discussion of GAO-17-581 and the June 2019 letters.[11] He contends that this "argument is not evidence." Appellant's Br. at 21-22 (citing 84 Fed. Reg. at 156). The Board addressed the arguments in the December 2019 brief but found that they relied almost exclusively on information submitted after the evidence submission window closed. R. at 6-7, 9.

Essentially, Mr. Davis is arguing that the December 2019 brief established relevance and reasonableness of GAO-17-581 and the June 2019 letters sufficient to trigger constructive possession. But the first mention of GAO-17-581 and the June 2019 letters in the record before the Court is the December 2019 brief to the Board. And although Mr. Davis asserted nonreceipt of the May 2016 RO decision in his December 2018 purported NOD, R. at 210, and in his January 2019 NOD as to VA's timeliness determination, R. at 182, neither of those documents referenced GAO-17-581 or mailing discrepancies to counsel's law firm.

---

[11] Mr. Davis again asserts that the December 2019 brief to the Board referred to the Chisholm and Rauber affidavits. But because his Board brief did not mention those affidavits, the Court will not address them further.

Thus, insofar as Mr. Davis seeks to rely on the December 2019 brief to establish a material fact—namely, the relevance of GAO-17-581 and the June 2019 letters—the December 2019 brief would function in this regard as evidence. *See Aviles-Rivera*, 35 Vet.App. at 277 (noting that evidence is something that tends to prove or disprove the existence of an alleged fact (citing BLACK'S LAW DICTIONARY)). And because, as the Board concluded, the evidence submission window closed on November 12, 2019, the Board could not consider the December 2019 brief to establish the relevance or reasonableness of GAO-17-581 and the June 2019 letters. *See* 38 U.S.C. § 7113(c). To conclude otherwise would effectively circumvent AMA record restrictions as it would enable veterans to "create" constructive possession of evidence where actual possession would be prohibited under section 7113(c). *Accord Aviles-Rivera*, 35 Vet.App. at 278-79 (holding that creating a loophole in the AMA record restriction rules would be contrary to congressional intent).

The constructive possession doctrine ensures that the record before the Board includes relevant evidence that VA reasonably would have investigated, gathered, and considered. *See Bowey*, 11 Vet.App. at 109; *see also Euzebio*, 989 F.3d at 1325 n.11 (noting that "the constructive possession doctrine [compels] . . . that the VA and the Board fulfill its statutory duty to gather and weigh all relevant evidence in reaching its determination"). But until Mr. Davis raised the issue in his December 2019 Board brief, nothing in the record suggested that the reliability of mail delivery would be relevant to his case. Thus, it was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law for the Board to refuse to consider evidence supporting Mr. Davis's December 2019 argument that the presumption of regularity had been rebutted—because that evidence was not properly before the Board.

### D. 38 C.F.R. § 3.156(b)

Along with his constructive possession argument, Mr. Davis argues that the Board should have considered the June 2019 letters pursuant to § 3.156(b). Appellant's Br. at 24-25. That regulation provides that, for legacy appeals, new and material evidence received prior to the expiration of the appeal period will be considered as having been filed in connection with the pending claim. 38 C.F.R. § 3.156(b) (2022). The veteran argues that the June 2019 letters were new and material evidence sent to VA shortly after the RO mailed him the SOC and prior to the expiration of the appeal period, thus implicating § 3.156(b). Appellant's Br. at 24. This argument

is unpersuasive because, as we have explained, the June 2019 letters were not actually or constructively before VA in Mr. Davis's case. Accordingly, his argument must fail.

E. Detrimental Reliance and Fair Process

Finally, Mr. Davis argues that he detrimentally relied on the September 9, 2019, Board letter acknowledging receipt of his VA Form 10182 and the Board's failure to inform him of the date his AMA NOD was received deprived him of fair process. Oral Argument at 33:27-34:35. He supports this argument by referring to his September 12, 2019, letter to the Board memorializing his understanding that the VA Form 10182 was received on September 9, 2019. *See* R. at 83. However, the Court finds these arguments unpersuasive as Mr. Davis's assertions of reliance are not reasonable.

The Board is obligated to provide fair process to appellants in the adjudication of their claims. *Smith v. Wilkie*, 32 Vet.App. 332, 337 (2020) (citing *Thurber v. Brown*, 5 Vet.App. 119 (1993)). Consistent with Congress's AMA goal of streamlining the appeals process, section 7113(c) provides a limited 90-day window within which to submit evidence. *See Cook v. McDonough*, __ Vet.App. __, __, 2023 WL 3488255, at *4-6 (May 17, 2023); *see also Aviles-Rivera*, 35 Vet.App. at 279-80.

Here, Mr. Davis was informed on VA Form 10182 that by selecting the "additional evidence" Board docket, he had 90 days to submit additional evidence. R. at 88. He acknowledges that he, through counsel, faxed his VA Form 10182 to the Board's fax number on August 14, 2019, with the understanding that it would be accepted as filed. Oral Argument at 12:40-12:45, 25:55-26:03, 27:08-27:44. The Board found that the VA Form 10182 was faxed and received on the same day. R. at 7. As noted above, Mr. Davis fails to demonstrate clear error in the Board's finding regarding the date of receipt and that the 90-day evidence submission window began on August 14, 2019. *See Laouini*, 586 F.3d at 478.

As noted, Mr. Davis argues that the September 9, 2019, letter acknowledging receipt of his VA Form 10182 represented that it received the VA Form 10182 on that date and that he was entitled to rely on that representation. Appellant's Br. at 10; Oral Argument at 33:27-34:35. In the decision on appeal, the Board concluded that the September 9, 2019, acknowledgment letter did not suggest a different date of receipt of the AMA NOD rather than August 14, 2019. R. at 7. The Court agrees that the acknowledgement letter contained no express or implied statement that the Board received the VA Form 10182 on September 9, 2019. Thus, Mr. Davis's assertion that the

15

September 9, 2019, letter was misleading and that he relied on the Board letter as reflecting a date of receipt is unsupported. *See* Oral Argument at 27:08-27:44 (counsel's acknowledgement that he faxed the VA Form 10182 to the Board fax number on August 14, 2019, with the understanding that the Board would receive it through that method). *Accord Williams v. Wilkie*, 32 Vet.App. 46, 56-58 (2019) (rejecting appellant's misleading notice argument where it was based on the veteran's own regulatory misinterpretation); *Edwards v. Peake*, 22 Vet.App. 29, 34-35 (2008) (rejecting appellant's misleading notice argument where it was based on the veteran's misinterpretation of the notice, which was "inconsistent with the clear notice" VA provided regarding the submission of additional evidence), *aff'd sub nom. Edwards v. Shinseki*, 582 F.3d 1351 (Fed. Cir. 2009).

## V. CONCLUSION

After considering the parties' briefs, oral argument, the record on appeal, and the governing law, the Court AFFIRMS the July 8, 2020, Board decision that found that a December 2018 NOD was not timely filed.

FALVEY, *Judge,* concurring: I fully agree with the Court's opinion. I only write separately to highlight some considerations for deciding whether evidence is constructively before the Board and to offer some guidance for how this inquiry turns on relevancy and reasonableness. *See Euzebio v. McDonough*, 989 F.3d 1305, 1321 (Fed. Cir. 2021).

Surprisingly few recent precedential decisions guide our consideration. For example, in *Euzebio*, the Federal Circuit ultimately left whether the NAS report was constructively part of the record up to us to decide on remand. *Id*. at 1324. And our conclusion that the report was constructively of record came in a nonprecedential decision. *Euzebio v. McDonough*, No. 17-2879, 2021 WL 2124303, at *3 (Vet. App. May 26, 2021). Helpfully, today's panel decision offers additional clarity about constructive possession.

As we continue grappling with the doctrine, the NAS report at issue in *Euzebio* serves as a useful reference point when considering whether some documents are constructively part of the record. Recall that the Federal Circuit explained that "[t]he importance and relevance of the NAS Reports to Agent Orange claims are well-known and well-established. . . . [they] exist, by congressional mandate, to give the VA necessary 'independent scientific review of the available scientific evidence regarding associations between diseases and exposure to dioxin and other

16

chemical compounds in herbicides.'" *Euzebio*, 989 F.3d at 1320. The NAS reports are so widely known that there was no dispute that the Board knew of them at the time of the Board decision. *Id*.

But none of the documents Mr. Davis argues about are in the same league as the NAS report. The closest he gets is with the GAO report, which ultimately tells us nothing about how likely it is that VA failed to send a document to a claimant. Thus, the GAO report is not relevant nor is it reasonable to expect that a line adjudicator would know about it or consider it when deciding the claim. Similar problems doom the rest of the records.

Until Mr. Davis raised the issue well after the closing of the record, nothing in the record suggested that VA's mailing practices would be germane in his case. And even if the matter had been raised, it is not reasonable to expect that letters sent by individual attorneys to VA leadership are so widely known to the agency as to expect that they would be considered and included in the file of all veterans who claim they did not receive a document.

The bottom line is, constructive possession is not a "get-out-of-submitting-evidence" card. Instead, it is a tool to make sure that relevant evidence—evidence that tends to prove or disprove a material fact—is included in the record when it can be reasonably expected that VA would have "investigated, gathered, and considered" that evidence. *Bowey v. West*, 11 Vet.App. 106, 109 (1998).

To this end, the inquiry can include several considerations. Why was the document created? How did VA get it? Is the document so widely known that we can presume VA adjudicators are aware or should be aware of it? If VA knows about the document, is the document relevant to how VA adjudicates claims? Is this the kind of document we would have expected VA to seek out under an applicable duty to assist if the veteran mentioned it to VA? Would we expect VA to address this kind of evidence if it was in the file? This is by no means an exhaustive list. But if the answer to most of these or similar question is "no", then odds are pretty good that the document was not constructively before VA.

Thus, a widely cited report established by Congress to address the relationship between herbicides and service comes in when the claim involves questions about whether herbicides caused the veteran's disability. But anecdotes about nonreceipt of mail from advocates submitted in other cases or sent to VA leadership are out; they are not things we would expect VA adjudicators to be aware of or to investigate and consider in individual cases. The same is true of

a GAO report obtained to address the efficiency of VA's mailing practices and not dealing with whether VA fails to send claim documents to claimants, it is simply not relevant. In fact, even if the report had actually been in the record, I would not fault the Board for not addressing it; the report does not deal with whether VA failed to send claim documents to veterans—the issue Mr. Davis cares about. "[T]he Board does not have to discuss all the evidence, but it must discuss the *relevant* evidence." *Miller v. Wilkie*, 32 Vet.App. 249, 260 (2020).

In the end, the documents offered by Mr. Davis are largely irrelevant. And in any case, I would not reasonably expect VA to include them as part of the record in his appeal.